NORMAN O. SAUEY, JR., AND CARLA M. SAUEY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6239-86.          Filed May 2, 1988.

*Jerome H. Kringel* and *James E. Schacht,* for the petitioners.

*Ronald J. Long,* for the respondent.

## OPINION

STERRETT, *Chief Judge:* * By notice of deficiency dated December 18, 1985, respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1981 in the amount of $8,635. Due to concessions by both parties, the only issue presented in this case is whether petitioners are entitled to an investment credit under section 38[1] with respect to an airplane that petitioner Norman O. Sauey, Jr., purchased and leased to a related corporation in 1981.

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioners Norman O. Sauey, Jr., and Carla M. Sauey, husband and wife, resided in Fort Lauderdale, Florida, at the time they filed their petition in this case. They filed their joint Federal income tax return for the year in issue with the Office of the Internal Revenue Service in Kansas City, Missouri.

On December 16, 1976, Norman O. Sauey, Jr. (hereinafter petitioner), leased a 1977 Beechcraft King Air E90 airplane (hereinafter the old airplane) to Portage Industries Corp. (hereinafter the corporation). On March 6, 1979, petitioner and the corporation entered into a second lease agreement which provided that petitioner would continue leasing the old airplane to the corporation for a period of 3 years.

In 1981, petitioner and the corporation terminated the March 6, 1979, lease. Petitioner then traded in the old airplane and purchased a new 1981 Beechcraft King Air B200 airplane (hereinafter the airplane). The airplane had a useful life of 6 years and cost $1,716,400. Petitioner obtained full recourse financing for the entire cost of the airplane from Michigan National Bank of Detroit, an unrelated creditor.

On September 11, 1981, petitioner entered into a written lease agreement with the corporation which provided that petitioner would lease the airplane to the corporation for a

---

*By order of the Chief Judge, this case was reassigned to the Chief Judge for opinion and decision.

[1]Unless otherwise indicated, all sections referred to are sections of the Internal Revenue Code of 1954 as amended and in effect during the year in issue, and all Rules references are to the Tax Court Rules of Practice and Procedure.

stated term of 2 years. This lease did not contain an option to renew, provided that petitioner retained all risk of loss with respect to the airplane, and required the corporation to pay petitioner a minimum monthly rental of $18,000 per month. The rent payable under this lease was the fair rental value of the airplane.

The corporation, a custom plastic manufacturer, leased the airplane from petitioner to satisfy the travel needs of its business. The corporation elected to lease, rather than purchase, an airplane because it wanted to avoid having additional debt appear on its balance sheet. In 1981, petitioner served as the president of the corporation and owned 94 percent of the corporation's common stock.

On January 18, 1983, petitioner and the corporation terminated the 1981 lease of the airplane. The following day, petitioner and Profile Industries Corp. (hereinafter Profile) entered into a written lease agreement which provided that petitioner would lease the airplane to Profile for a stated term of 2 years. The rent payable under this lease was $12,000 per month. During 1983, petitioner owned all of the stock of Profile.

Other than the airplane, the old airplane, and some real property that petitioner leased to the corporation in 1981, petitioner did not lease any other real or personal property to the corporation or to any other individual or entity during the years 1976 through 1983.

On their joint 1981 Federal income tax return, petitioners claimed an investment credit with respect to the airplane in the amount of $133,902. Petitioners used $9,149 of this credit in 1981 and carried the remaining $124,753 of the credit forward to succeeding years. In his notice of deficiency, respondent disallowed the credit, asserting that it is not allowable under section 46(e)(3)(B).

The question we face is whether petitioners are entitled to an investment credit with respect to the airplane under section 38. Section 38 allows a credit against income tax for qualified investments in certain depreciable property. However, when a noncorporate taxpayer such as petitioner acquires and leases property that is eligible for the investment credit, an investment credit is allowable with respect to the property only if the taxpayer satisfies one of two

tests set forth in section 46(e)(3). That section provides, in relevant part, as follows:

SEC. 46(e). LIMITATIONS WITH RESPECT TO CERTAIN PERSONS.—

(3) NONCORPORATE LESSORS.—A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—

    (A) the property subject to the lease has been manufactured or produced by the lessor, or

    (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property.

The parties have stipulated that the airplane is depreciable property that is eligible for the investment credit, that petitioner did not produce or manufacture the airplane, and that, during the first 12 months after the date on which the airplane was transferred to the corporation in 1981, the sum of the deductions with respect to the airplane allowable to petitioner solely by reason of section 162 exceeded 15 percent of the rental income produced by the airplane. The parties disagree, however, over whether the 1981 lease of the airplane satisfied the 50-percent requirement of section 46(e)(3)(B). Whether the 1981 lease satisfied this requirement is a question of fact, and petitioners bear the burden of proof with respect to this issue. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[2]

The 1981 lease of the airplane contained a fixed and definite term of 2 years, which was less than 50 percent of the useful life of the airplane, and did not contain an option to renew. Thus, on its face, the lease satisfied the 50-percent requirement of section 46(e)(3)(B). Accordingly, with this evidence in the record of this stipulated case, the burden of going forward should be viewed as shifting to respondent.

Respondent's argument that the facts and circumstances of this case reveal that it was reasonably certain at the inception of the lease that the corporation would continue leasing the airplane beyond the term stated in the lease is

---

[2]See *Harvey v. Commissioner*, T.C. Memo. 1986-381.

accepted as an effort to carry that burden. He contends that we should disregard the stated term of the lease and find that the actual term of the lease was of indefinite duration and therefore not less than 50 percent of the useful life of the airplane. Respondent also argues, in the alternative, that the leases of the old airplane in 1976 and 1979 and the leases of the airplane in 1981 and 1983 were successive leases of the same or substantially similar property that must be aggregated under section 1.46-4(d)(4), Income Tax Regs., and treated as one lease for purposes of section 46(e)(3)(B). Respondent then contends that the aggregate term of these combined leases is not less than 50 percent of the combined useful lives of the airplanes.

Petitioners contend, of course, that the stated term of the 1981 lease should control, arguing that there are no facts in this case that would support a finding that the term of the lease was actually indefinite. Petitioners also contend that the airplane and the old airplane are not substantially similar pieces of property within the meaning of section 1.46-4(d)(4), Income Tax Regs., and therefore argue that the leases of the airplane and the old airplane should not be aggregated under that regulation and treated as one lease for purposes of section 46(e)(3)(B).

We agree with petitioners that the record in this case is devoid of evidence that would support a finding that the term of the 1981 lease was actually indefinite. For instance, there is no evidence that petitioner had an established practice of automatically renewing all expired leases without renegotiation of the lease terms; no evidence that the airplane was suited for use only in the corporation's business or that petitioner sold the airplane when the corporation no longer needed it (i.e., there is no evidence that petitioner purchased the airplane to satisfy the particular business needs of the corporation); and no evidence that petitioner's lease of the airplane to the corporation in 1981 was motivated primarily by tax considerations.[3] To the

---

[3]Consequently, this case is readily distinguishable from the numerous cases wherein, for purposes of sec. 46(e)(3)(B), we have disregarded a stated lease term in a written lease document and found the actual term of the lease to be indefinite. See, e.g., *Harvey v. Commissioner,* T.C. Memo. 1986-381; *Sanders v. Commissioner,* T.C. Memo. 1984-511, affd. without published opinion 770 F.2d 174 (11th Cir. 1985); *Peterson v. Commissioner,* T.C. Memo. 1982-442.

contrary, the record establishes that, rather than selling the airplane when the corporation no longer needed it, petitioner agreed to a termination of the 1981 lease before it expired and leased the airplane to a different, albeit related, entity on terms that differed substantially from the terms of the 1981 lease, e.g., the rent was reduced by a third. Moreover, the record establishes that petitioner leased the airplane to the corporation for legitimate business reasons, namely, to satisfy the travel needs of the corporation's business and avoid having additional indebtedness appear on the corporation's balance sheet.

To be sure, we have no doubt that petitioner was aware of the tax consequences of his leasing activities. However, we have never held that persons engaged in business activities must be ignorant of the tax benefits resulting from those activities in order to be eligible for such benefits.

Respondent's real concern in this case appears to be that petitioner and the corporation are related parties. We recognize that in leasing transactions involving related parties there is a clear potential for abuse. However, Congress did not see fit to deny the investment credit to noncorporate lessors who are related to their lessees, even though it easily could have done so. See sec. 267. Rather, Congress simply imposed two hard-and-fast tests (the 50-percent test and the 15-percent test), and provided that *all* noncorporate lessors of property eligible for the investment credit are entitled to the credit if they satisfy these two tests. See *Ridder v. Commissioner*, 76 T.C. 867, 875-876 (1981). Consequently, the fact that petitioner and the corporation are related parties, standing alone, cannot be a basis for denying the investment credit to petitioners.

On the record before us, we conclude that it was not reasonably certain at the inception of the 1981 lease that the corporation would continue leasing the airplane beyond the term stated in the lease. The record does not demonstrate that the form of the transaction, a 2-year lease, was not in accord with its substance. Consequently, we conclude that the term of the 1981 lease was less than 50 percent of

the useful life of the airplane.[4] Petitioners have carried their ultimate burden of proof.

Finally, we reject respondent's contention that the leases of the airplane and the old airplane must be aggregated under section 1.46-4(d)(4), Income Tax Regs.[5] The leases in question were negotiated and entered into consecutively, that is, upon the expiration or termination of a prior lease, and section 1.46-4(d)(4), Income Tax Regs., only requires the aggregation of successive leases that are negotiated and entered into simultaneously. See *Ridder v. Commissioner, supra* at 872 n. 5.[6] Again, the record does not show that the substance varied from the form of the agreements, i.e., consecutive execution of the leases, and therefore petitioners have carried their burden.

In view of the foregoing, we hold that (1) the 1981 lease of the airplane satisfied the 50-percent requirement of section 46(e)(3)(B), and (2) the leases of the airplane and the old airplane need not be aggregated under section 1.46-4(d)(4), Income Tax Regs. Consequently, petitioners are entitled to an investment credit with respect to the airplane under section 38.

*Decision will be entered under Rule 155.*

---

[4]In *McNamara v. Commissioner*, 827 F.2d 168, 172 (7th Cir. 1987), vacating and remanding a Memorandum Opinion of this Court, the Court of Appeals for the Seventh Circuit held that—

"At least in cases involving leasing activity that is not primarily tax motivated, where the stated lease term in a written lease document satisfies the 50 percent requirement [of sec. 46(e)(3)(B)], that document should be respected * * * unless the Commissioner can demonstrate that * * * [the parties to the lease had a fixed intention at the inception of the lease] that the lease * * * [would] be continuously renewed on the same or substantively identical terms. [Fn. ref. omitted.]"

While we do not adopt this test in this case, we note that, on the record before us, we have no difficulty in concluding that petitioner and the corporation did not have a fixed intention at the inception of the 1981 lease to renew the lease on the same or substantively identical terms.

[5]Sec. 1.46-4(d)(4), Income Tax Regs., provides, in relevant part, as follows:

(4) * * * If a noncorporate lessor enters into two or more successive leases with respect to the same or substantially similar items of section 38 property, the terms of such leases shall be aggregated and such leases shall be considered one lease for the purpose of determining whether the term of such leases is less than 50 percent of the estimated useful life of the property subject to such leases. Thus, for example, if an individual owns an airplane with an estimated useful life of 7 years and enters into three successive 3-year leases of such airplane, such leases will be considered to be one lease for a term of nine years for the purpose of determining whether the term of the lease is less than 3½ years (50 percent of the 7-year estimated useful life).

[6]To the extent that *Hunter v. Commissioner*, T.C. Memo. 1985-271, holds to the contrary, that case will not be followed.

Reviewed by the Court.

CHABOT, NIMS, KÖRNER, SHIELDS, HAMBLEN, COHEN, JACOBS, WRIGHT, PARR, WELLS, RUWE, and WHALEN, *JJ.*, agree with the majority opinion.

SWIFT, *J.*, concurs in the result only.

---

WHITAKER, *J.*, dissenting: In this case, the majority concludes that petitioner shifts to respondent the burden of going forward with the evidence merely by proof that the lease of the airplane contained "a fixed and definite term of 2 years" and "did not contain an option to renew." The majority also fails to give even lip service to the long-established theorem that "Transactions between a corporation and its controlling stockholders are subject to special scrutiny." *Ingle Coal Corp. v. Commissioner*, 174 F.2d 569, 571 (7th Cir. 1949).

This case is but another illustration of the difficulty we frequently have with fully stipulated cases. One may argue that respondent had the opportunity to expand the stipulation to show actual use of the plane during the second lease term, i.e., to show abuse if that existed. However, it is up to the petitioner to show error in the statutory notice. That was not done here.

The petitioner husband was for practicable purposes the sole shareholder in both corporations. The stipulated facts show that the first corporation had a business need for the airplane. There is no stipulated fact to indicate that such business need changed in any respect when 16 months later the lessor terminated that lease and switched the plane to the second wholly owned corporation.[1] Whether the second lessee had any business need for a plane does not appear. It is thus reasonable to infer from the stipulated facts that the business need of the first lessee continued and was supplied by the second lessee. At least that inference should be rebutted before the burden of going forward is shifted to respondent. Otherwise "special scrutiny" is not given to the transactions.

---

[1] The majority states "the record establishes that, rather than selling the airplane *when the corporation no longer needed it,* petitioner agreed to a termination of the 1981 lease before it expired." (Emphasis supplied.) It is not clear whether use of the clause "when the corporation no longer needed it" is simply a reference to facts which have been deemed important in other cases or whether it is a fact in this case. If the latter, it is not supported by the record.

While it is possible that the majority's rule of shifting the burden of going forward on showing of a 2-year lease term and no option might be appropriate where the lessor and lessee are unrelated, it is not, in my judgment, appropriate in a case such as this.[2]

For the forgoing reasons, I would hold that the petitioners have failed to carry their burden of proof in this case.

PARKER, CLAPP, GERBER, and WILLIAMS, *JJ.*, agree with this dissent.

---

[2]The majority seems to feel that the business purposes of the first corporate lessee somehow legitimate the transaction for petitioner. The opposite is in fact the case. The lessee's business purposes are immaterial from the standpoint of justifying the lessor's actions; they simply create an inference that the business need continued, an inference which should have been rebutted by petitioner in order to carry his burden of proof.