RICHARD J. BORCHERS and JANE E. BORCHERS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Borchers v. Commissioner
Docket No. 3576-86.
United States Tax Court
T.C. Memo 1988-349; 1988 Tax Ct. Memo LEXIS 374; 55 T.C.M. (CCH) 1469; T.C.M. (RIA) 88349; August 4, 1988
Bernie H. Beaver, for the petitioners. Gail K. Gibson, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge:  The Commissioner determined a $ 13,322 deficiency in the 1982 income tax of petitioners, husband and wife. The issue before us is whether they are entitled to an investment tax credit under section 38, I.R.C. 1954, with respect to computer equipment leased by the husband (petitioner) to their wholly owned corporation. The case was submitted on the basis of a stipulation of facts and attached exhibits. At the time the petition herein was filed, petitioners resided in Minnesota. During 1982 petitioner owned 90 *375 percent of the stock of Decision Systems, Inc. (hereinafter sometimes referred to as Decision or Decision Systems or the corporation), and his wife owned the remaining 10 percent of the stock. He was its president, with a salary of $ 169,400, and she was its secretary, with a salary of $ 5,000. They were its only officers. Both were directors. Decision Systems was incorporated in Minnesota in 1974, and is engaged in the business of providing a variety of computer related services. In 1982, it reported $ 115,313 taxable income. In 1982, petitioner leased computer equipment to Decision Systems. He leased only to that corporation in 1982. Lease payments made to him by Decision in that year amounted to $ 49,299. [1]
A portion of the equipment leased to Decision in 1982 had been purchased by petitioner in 1982. Other pieces leased to Decision that year had been purchased by petitioner before 1982. However, the issue before us, petitioner's entitlement to an *376 investment tax credit, relates only to the computer equipment purchased by petitioner and then leased to Decision in 1982. In 1982 petitioner purchased the following used equipment for $ 124,968 which it then leased to Decision: Lease
Equipment
Cost
Date
IBM Key/Diskette
$   3,000
4-1-82  Three Teleray 10 N CRT
3,891
4-1-82  Two Honeywell Disk Drives
9,900
4-1-82  Alpha L62 CPU
38,990
9-15-82 DPS 16 & Printer
43,187
12-15-82
2-390 Disk Drives
26,000
12-28-82
$ 124,968
The parties agree for the purpose of this case that the useful life of the foregoing equipment was not less than three years. On brief, petitioner contends and the Government concedes that the useful life of the property is six years. [2] On his 1982 return, petitioner claimed an investment tax credit in the amount of $ 12,497 in respect of the above equipment. The following pieces of equipment were first leased by petitioner to Decision in 1981 and then were re-leased to it in 1982: Original
Lease
Re-lease
Equipment
Cost
Date
Date
North Star Micro
Processor
$  6,540.75
6-11-81 7-12-82 HIS Computer System
29,000.00
6-11-81 7-12-82 Four Telerays; One
printer
7,288.00
12-23-81
12-23-82
Four IBM 3742
12,200.00
12-23-81
12-23-82
One ECRM, Scanner
16,500.00
12-23-81
12-23-82
$ 71,528.75
*377 All of the equipment purchased in 1982 and originally leased to Decision in 1982 was leased again to it on the same date one year later in 1983. Of the equipment which was first leased in 1981 and re-leased in 1982, the pieces which were leased again in 1983 are listed below: Original
1983
Lease
Lease
Equipment
Date
Date
North Star Micro Processor
6-11-81
7-12-83
HIS Computer System
6-11-81
7-12-83
In all cases in which equipment was re-leased, the rental fee required under the new lease was not the same as that in the original lease. The 1981, 1982, and 1983 equipment leases were all effectuated by the execution of form lease documents. These form leases allowed for the insertion of a description of the property leased, its "total cost" to the lessor, the "term in months" of the lease, the periodic rental required, the "number of installments" covered by the lease, and the "total rent" due under the lease. In each of the leases executed in 1981, 1982, and 1983 the "term in months" indicated was 12 months. The leases did not include provisions governing renewal thereof. The standard contact language of the form leases provided that *378 "Title to the equipment shall at all times remain in Lessor". It further provided that the "Lessee * * * shall protect and defend the title of Lessor". In addition, the lessee was obligated to "promptly pay when due all sales, use, property, excise and other taxes and all license and registration fees". It was also obligated to "maintain the Equipment in good repair, condition and working order * * * at its expense" and to maintain insurance on the equipment. Moreover, if the equipment was "lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit", on payment of certain amounts to the lessor, the equipment would "become the property of Lessee". Each lease described itself as "a completely net lease" in which the "Lessee's obligation to pay the rent and other amounts payable by Lessee hereunder is unconditional". In the leases, the "Lessor makes no warranty with respect to the equipment" and the "Lessee agrees to make the rental and other payments required hereunder without regard to the condition of the Equipment and to look only to persons other than Lessor * * * should any item of equipment for any reason be defective". Although in each lease a specific *379 rental payment was inserted into the space therefor in the form document, the standard language of the lease made provision for the adjustment of that amount under certain conditions. It provided that: If the actual cost of the Equipment is more or less than the Total Cost as shown above, the amount of each installment of rent will be adjusted up or down to provide the same yield to Lessor as would have been obtained if the actual cost had been the same as the Total Cost. Adjustments of 10% or less may be made by written notice from Lessor to Lessee. Adjustments of more than 10% shall be made by the execution of a new lease reflecting the change in Total Cost and rent but otherwise being the same as this lease. Also during 1982 petitioner sold computer equipment, receiving $ 14,000 therefor. Of this $ 14,000 sold in 1982, $ 7,500 was sold to Extendicom, a company in Indianapolis, after having been placed on consignment in 1981. The record does not disclose either the purchaser of the remaining $ 6,500 equipment, or when or at what cost petitioner had acquired any of the $ 14,000 equipment or whether any of it had ever been leased to petitioner's corporation. On Form 3468, *380 "Computation of Investment Credit", filed with petitioners' 1982 Federal income tax return, a $ 12,497 "investment credit" was claimed with respect to the $ 124,968 computer equipment purchased in 1982. The Commissioner disallowed the credit "because it has not been established that the lease term entered into between you and Decision Systems, Inc. was for less than one-half the useful life of the equipment as required under section 46(e) of the Internal revenue Code". Section 46(e), headed "Limitations with Respect to Certain Persons", provides in pertinent part that: (3) Noncorporate lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property, and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to *381 such property) exceeds 15 percent of the rental income produced by such property. [Emphasis supplied.]
The parties have stipulated that the latter of the two conditions contained in subparagraph (B) is satisfied, i.e., that "the deductions * * * [to petitioner] by reason of section 162 exceeded 15% of the rental income produced by such property during the first 12 months after the date of transfer of the equipment to the lessee, Decision Systems, Inc." Thus, the question presented to us is whether under section 46(e)(3)(B), I.R.C. 1954, "the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property". The leases before us provide, on their face, for 12-month lease terms with no provision for renewal. These terms are clearly less than 50 percent of the six year useful life of the computer equipment leased. The Government does not dispute that the literal terms of the 12-month leases cover less than half of the equipment's life, but, instead, argues that the leases were really for an indefinite term. In deciding whether a lease is of indefinite duration or limited to the definite term specified in the lease, all *382 the facts and circumstances are considered. Owen v. Commissioner,T.C. Memo. 1987-375; Harvey v. Commissioner, T.C. Memo. 1986-38l; Sanders v. Commissioner,T.C. Memo. 1984-511, affd. without published opinion 770 F.2d 174 (11th Cir. 1985). See G. W. Van Keppel Co. v. Commissioner,295 F.2d 767, 77l (8th Cir. 1961); Highland Hills Swimming Club, Inc. v. Wiseman,272 F.2d 176, 179 (10th Cir. 1959); Buddy Schoellkopf Products, Inc. v. Commissioner,65 T.C. 640, 656 (1975) (dealing with the same factual issue in the context of the determination whether depreciation is to be taken over the lease term or over the useful life of an improvement to leased property). The duration of the lease is decided based on the "'realistic contemplation' of the parties at the time the lease was entered into". Harvey v. Commissioner,T.C. Memo. 1986-381, quoting Hokanson v. Commissioner,730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Consequently, if it appears that the substance of the transaction is that the lessee will *383 continue leasing the property beyond the period stated in the lease, then the specified lease term is disregarded and the lease is considered to be of indefinite length. Harvey v. Commissioner,T.C. Memo. 1986-381; Sanders v. Commissioner,T.C. Memo. 1984-511; Peterson v. Commissioner,T.C. Memo. 1982-442; See G. W. Van Keppel Co. v. Commissioner,295 F.2d at 771. The types of facts and circumstances which have in the past aided us in determining whether a lease term was indefinite are as follows: (1) an established practice on the part of the lessor of buying equipment for lease in order to meet the special needs of the lessee ( Connor v. Commissioner,T.C. Memo. 1987-224, affd. 847 F.2d 985 (1st Cir. 1988): Harvey v. Commissioner,T.C. Memo. 1986-381; Sanders v. Commissioner,T.C. Memo. 1984-511; Peterson v. Commissioner,T.C. Memo. 1982-442); (2) the lessor has control of the lessee (Harvey v. Commissioner, supra; Peterson v. Commissioner, supra); (3) the lessor leased only to the controlled lessee (Harvey v. *384 Commissioner, supra; Sanders v. Commissioner, supra); (4) the lessee leased only from the lessor ( Sanders v. Commissioner, supra;Peterson v. Commissioner, supra); (5) the leases were renewed either automatically or without renegotiation ( Sanders v. Commissioner, supra); (6) the equipment was sold once the lessee no longer needed it ( Sanders v. Commissioner, supra); (7) the purpose of the leasing arrangement was tax avoidance ( Sanders v. Commissioner, supra;Peterson v. Commissioner, supra); and (8) the leasing was a "financing arrangement" (Harvey v. Commissioner, supra). In a recent Court-reviewed case, Sauey v. Commissioner,90 T.C. 824 (1988), on the facts before it in a stipulated record, the Court thought that the stipulated facts, involving a lease by an individual to his solely controlled corporation, were insufficient to establish that the lease was in fact for an indefinite period. In a strong dissent, five judges disagreed with the majority opinion. The majority opinion regarded it as incumbent upon the Commissioner to present evident *385 (beyond what appeared in the stipulation) to support his position that the term of the lease was really indefinite. The posture of the present case, also submitted on the basis of a stipulated record, is comparable to that in Sauey,[3] and, under the compulsion of that case, we must hold for petitioner. Decision will be entered under Rule 155.
Footnotes
1. Only $ 47,649 lease payments were reported on petitioner's 1982 return. Petitioner has not challenged the Commissioner's adjustment in his notice of deficiency increasing petitioner's lease income by $ 1,650. ↩
2. Petitioner, however, listed the $ 124,968 equipment purchased in 1982 as "5 yr property" for the purpose of depreciation. ↩
3. As was noted in Sauey v. Commissioner,90 T.C. 824, 830 n. 4 (1988), the result reached therein is supported by McNamara v. Commissioner,827 F.2d 168, 172 (7th Cir. 1987). However, the First Circuit has since rejected McNamara in Connor v. Commissioner,847 F.2d 985↩ (1st Cir. 1988).