RICHARD J. BORCHERS AND JANE E. BORCHERS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3576-86.          Filed July 19, 1990.

*Bernie H. Beaver,* for the petitioners.
*Gail K. Gibson,* for the respondent.

## OPINION

RAUM, *Judge:* The Court of Appeals for the Eighth Circuit vacated our decision in this case and remanded the case for further proceedings. See *Borchers v. Commissioner,* T.C. Memo. 1988-349, vacated and remanded 889 F.2d 790 (8th Cir. 1989). We have reexamined the entire case, and have concluded that the decision should be in favor of respondent. Before undertaking to apply the relevant principles of law to the facts of this case, we will, for convenience, restate in full the bulk of our prior opinion,

including the facts and the general discussion of the law in this field.

The Commissioner determined a $13,322 deficiency in the 1982 income tax of petitioners, husband and wife. The issue before us is whether they are entitled to an investment tax credit under section 38, I.R.C. 1954, with respect to computer equipment leased by the husband (petitioner) to their wholly owned corporation.

The case was submitted on the basis of a stipulation of facts and attached exhibits. At the time the petition herein was filed, petitioners resided in Minnesota.

During 1982 petitioner owned 90 percent of the stock of Decision Systems, Inc. (hereinafter sometimes referred to as Decision or Decision Systems, or the corporation), and his wife owned the remaining 10 percent of the stock. He was its president, with a salary of $169,400, and she was its secretary, with a salary of $5,000. They were its only officers. Both were directors.

Decision Systems was incorporated in Minnesota in 1974, and is engaged in the business of providing a variety of computer related services. In 1982, it reported $115,313 taxable income.

In 1982, petitioner leased computer equipment to Decision Systems. He leased only to that corporation in 1982. Lease payments made to him by Decision in that year amounted to $49,299.[1]

A portion of the equipment leased to Decision in 1982 had been purchased by petitioner in 1982. Other pieces leased to Decision that year had been purchased by petitioner before 1982. However, the issue before us, petitioner's entitlement to an investment tax credit, relates only to the computer equipment purchased by petitioner and then leased to Decision in 1982.

In 1982 petitioner purchased the following used equipment for $124,968 which it then leased to Decision:

---

[1]Only $47,649 lease payments were reported on petitioner's 1982 return. Petitioner has not challenged the Commissioner's adjustment in his notice of deficiency increasing petitioner's lease income by $1,650.

| Equipment | Cost | Lease date |
|---|---|---|
| IBM key/diskette | $3,000 | 04-01-82 |
| Three Teleray 10 N CRT | 3,891 | 04-01-82 |
| Two Honeywell disk drives | 9,900 | 04-01-82 |
| Alpha L62 CPU | 38,990 | 09-15-82 |
| DPS 16 and printer | 43,187 | 12-15-82 |
| 2-390 disk drives | 26,000 | 12-28-82 |
| | 124,968 | |

The parties agree for the purpose of this case that the useful life of the foregoing equipment was not less than 3 years. On brief, petitioner contends and the Government concedes that the useful life of the property is 6 years.[2] On his 1982 return, petitioner claimed an investment tax credit in the amount of $12,497 in respect of the above equipment.

The following pieces of equipment were first leased by petitioner to Decision in 1981 and then were re-leased to it in 1982:

| Equipment | Cost | Original lease date | Re-lease date |
|---|---|---|---|
| North Star micro processor | $6,540.75 | 06-11-81 | 07-12-82 |
| HIS computer system | 29,000.00 | 06-11-81 | 07-12-82 |
| Four Telerays; one printer | 7,288.00 | 12-23-81 | 12-23-82 |
| Four IBM 3742 | 12,200.00 | 12-23-81 | 12-23-82 |
| One ECRM scanner | 16,500.00 | 12-23-81 | 12-23-82 |
| | 71,528.75 | | |

All of the equipment purchased in 1982 and originally leased to Decision in 1982 was leased again to it on the same date 1 year later in 1983. Of the equipment which was first leased in 1981 and re-leased in 1982, the pieces which were leased again in 1983 are listed below:

| Equipment | Original lease date | 1983 lease date |
|---|---|---|
| North Star micro processor | 06-11-81 | 07-12-83 |
| HIS computer system | 06-11-81 | 07-12-83 |

---

[2]Petitioner, however, listed the $124,968 equipment purchased in 1982 as "5 yr. property" for the purpose of depreciation.

In all cases in which equipment was re-leased, the rental fee required under the new lease was not the same as that in the original lease.

The 1981, 1982, and 1983 equipment leases were all effectuated by the execution of form lease documents. These form leases allowed for the insertion of a description of the property leased, its "total cost" to the lessor, the "term in months" of the lease, the periodic rental required, the "number of installments" covered by the lease, and the "total rent" due under the lease. In each of the leases executed in 1981, 1982, and 1983, the "term in months" indicated was 12 months. The leases did not include provisions governing renewal thereof.

The standard contract language of the form leases provided that "Title to the equipment shall at all times remain in Lessor." It further provided that the "Lessee * * * shall protect and defend the title of Lessor." In addition, the lessee was obligated to "promptly pay when due all sales, use, property, excise and other taxes and all license and registration fees." It was also obligated to "maintain the Equipment in good repair, condition and working order * * * at its expense" and to maintain insurance on the equipment. Moreover, if the equipment was "lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit," on payment of certain amounts to the lessor, the equipment would "become the property of Lessee." Each lease described itself as "a completely net lease" in which the "Lessee's obligation to pay the rent and other amounts payable by Lessee hereunder is unconditional." In the leases, the "Lessor makes no warranty with respect to the equipment" and the "Lessee agrees to make the rental and other payments required hereunder without regard to the condition of the Equipment and to look only to persons other than Lessor * * * should any item of equipment for any reason be defective."

Although in each lease a specific rental payment was inserted into the space therefor in the form document, the standard language of the lease made provision for the adjustment of that amount under certain conditions. It provided that:

If the actual cost of the Equipment is more or less than the Total Cost as shown above, the amount of each installment of rent will be adjusted up or down to provide the same yield to Lessor as would have been obtained if the actual cost had been the same as the Total Cost. Adjustments of 10% or less may be made by written notice from Lessor to Lessee. Adjustments of more than 10% shall be made by the execution of a new lease reflecting the change in Total Cost and rent but otherwise being the same as this lease.

Also during 1982 petitioner sold computer equipment, receiving $14,000 therefor. Of this $14,000 sold in 1982, $7,500 was sold to Extendicom, a company in Indianapolis, after having been placed on consignment in 1981. The record does not disclose either the purchaser of the remaining $6,500 equipment, or when or at what cost petitioner had acquired any of the $14,000 equipment or whether any of it had ever been leased to petitioner's corporation.

On Form 3468, "Computation of Investment Credit," filed with petitioners' 1982 Federal income tax return, a $12,497 "investment credit" was claimed with respect to the $124,968 computer equipment purchased in 1982. The Commissioner disallowed the credit "because it has not been established that the lease term entered into between you and Decision Systems, Inc. was for less than one-half the useful life of the equipment as required under section 46(e) of the Internal Revenue Code."

Section 46(e), headed "Limitations with Respect to Certain Persons," provides in pertinent part that:

(3) NONCORPORATE LESSORS.—A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if—

* * * * * * *

(B) *the term of the lease* (taking into account options to renew) *is less than 50 percent of the useful life of the property,* and for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. [Emphasis supplied.]

The parties have stipulated that the latter of the two conditions contained in subparagraph (B) is satisfied, i.e., that "the deductions * * * [to petitioner] by reason of

section 162 exceeded 15% of the rental income produced by such property during the first 12 months after the date of transfer of the equipment to the lessee, Decision Systems, Inc." Thus, the question presented to us is whether under section 46(e)(3)(B), I.R.C. 1954, "the term of the lease (taking into account options to renew) is less than 50 percent of the useful life of the property."

The leases before us provide, on their face, for 12-month lease terms with no provision for renewal. These terms are clearly less than 50 percent of the 6-year useful life of the computer equipment leased. The Commissioner does not dispute that the literal terms of the 12-month leases cover less than half of the equipment's life, but, instead, argues that the leases were really for an indefinite term.

In deciding whether a lease is of indefinite duration or limited to the definite term specified in the lease, all the facts and circumstances are considered. *Owen v. Commissioner*, T.C. Memo. 1987-375, affd. 881 F.2d 832 (9th Cir. 1989), affd. sub nom. *McEachron v. Commissioner*, 873 F.2d 176 (8th Cir. 1988); *Harvey v. Commissioner*, T.C. Memo. 1986-381; *Sanders v. Commissioner*, T.C. Memo. 1984-511, affd. without published opinion 770 F.2d 174 (11th Cir. 1985). See *G.W. Van Keppel Co. v. Commissioner*, 295 F.2d 767, 771 (8th Cir. 1961); *Highland Hills Swimming Club, Inc. v. Wiseman*, 272 F.2d 176, 179 (10th Cir. 1959); *Buddy Schoellkopf Products, Inc. v. Commissioner*, 65 T.C. 640, 656 (1975) (dealing with the same factual issue in the context of the determination whether depreciation is to be taken over the lease term or over the useful life of an improvement to leased property). The duration of the lease is decided based on the " 'realistic contemplation' of the parties at the time the lease was entered into." *Harvey v. Commissioner*, T.C. Memo. 1986-381, quoting *Hokanson v. Commissioner*, 730 F.2d 1245, 1248 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Consequently, if it appears that the substance of the transaction is that the lessee will continue leasing the property beyond the period stated in the lease, then the specified lease term is disregarded and the lease is considered to be of indefinite length. *Harvey v. Commissioner*, T.C. Memo. 1986-381; *Sanders v. Commissioner*, T.C. Memo. 1984-511; *Peterson v.*

*Commissioner,* T.C. Memo. 1982-442; see *G.W. Van Keppel Co. v. Commissioner,* 295 F.2d at 771.

The types of facts and circumstances which have in the past aided us in determining whether a lease term was indefinite are as follows: (1) An established practice on the part of the lessor of buying equipment for lease in order to meet the special needs of the lessee (*Connor v. Commissioner,* T.C. Memo. 1987-223, affd. 847 F.2d 985 (1st Cir. 1988); *Harvey v. Commissioner,* T.C. Memo. 1986-381; *Sanders v. Commissioner,* T.C. Memo. 1984-511; *Peterson v. Commissioner,* T.C. Memo. 1982-442); (2) the lessor has control of the lessee (*Harvey v. Commissioner, supra; Sanders v. Commissioner, supra; Peterson v. Commissioner, supra*); (3) the lessor leased only to the controlled lessee (*Harvey v. Commissioner, supra; Sanders v. Commissioner, supra*); (4) the lessee leased only from the lessor (*Sanders v. Commissioner, supra; Peterson v. Commissioner, supra*); (5) the leases were renewed either automatically or without renegotiation (*Sanders v. Commissioner, supra; Peterson v. Commissioner, supra*); (6) the equipment was sold once the lessee no longer needed it (*Sanders v. Commissioner, supra*); (7) the purpose of the leasing arrangement was tax avoidance (*Sanders v. Commissioner, supra; Peterson v. Commissioner, supra*); and (8) the leasing was a "financing arrangement" (*Harvey v. Commissioner, supra*).

In our attempt to determine whether the leases involved in the stipulated record of this case were indefinite in the light of the foregoing criteria, we are confronted at the threshold, as will appear shortly, with a burden of proof issue and the relationship of that burden to the burden of going forward.

Had petitioners presented to the Court merely the naked 12-month 1982 leases (that could conceivably have been to an uncontrolled or unrelated lessee), without more, they would plainly have made out a prima facie case. The burden of going forward in such circumstances would have been on the Commissioner, and, had he presented nothing to cast doubt upon the treatment of the 12-month leases as they stood, he would have failed to discharge his burden of going forward. In such circumstances, it would at least be

arguable that petitioners had carried their burden of proof and were therefore entitled to a decision in their favor.

On the other hand, if the Commissioner had instead shown, as he did here in the stipulation of facts, that the leases ran to a corporation owned and controlled by petitioners, that petitioner had leased only to that lessee in 1982, that he had entered into other 12-month leases with the same controlled lessee in 1981 (which were renewed in 1982), and that for the period 1981, 1982, and 1983, most of these leases were renewed annually (except for three of the 1981 leases in 1983), or new 12-month leases were executed upon expiration of the current leases, on substantially the same terms albeit at different individual rentals, we think that, at the very least, troubling doubts would have been cast upon petitioners' prima facie case. Indeed, such evidence strongly suggests that the leases were subject to the manipulative will of the lessor to extend the leases beyond the terms thereof, and were of indefinite duration. While such evidence might not have been sufficient to carry the burden of proof if such burden were upon the Commissioner, it would certainly have been sufficient to carry his burden of going forward. And the fact that such evidence was presented in a stipulation of facts—as it was here—does not deprive it of the same force in respect of the burden of going forward as it would have had if it had been presented separately from the stipulation.

To be sure, as just indicated, such evidence presented by the Commissioner might not be sufficient to carry the burden of proof if he were saddled with both the burden of going forward *and* the burden of proof. But the burden of proof is not on the Commissioner. It is hornbook law that the burden of proof is on the taxpayer, as shown in the oft-cited case of *Welch v. Helvering,* 290 U.S. 111 (1933), and in our Rule 142(a).[3] And it is also well established that the taxpayer's burden of proof generally *never shifts. United States v. Rexach,* 482 F.2d 10, 16 (1st Cir. 1973); *Llorente v. Commissioner,* 74 T.C. 260, 276 (1980) (Tannenwald, J., concurring), affd. in part and reversed and remanded in part 649 F.2d 152 (1981). See *Rockwell v.*

---

[3]Unless otherwise indicated, all references to Rules are to the Tax Court Rules of Practice and Procedure.

*Commissioner*, 512 F.2d 882, 885 (9th Cir. 1975), cert. denied 423 U.S. 1015 (1975), affg. a Memorandum Opinion of this Court; *Conforte v. Commissioner*, 74 T.C. 1160, 1178-1179 (1980); *Estate of Fittl v. Commissioner*, T.C. Memo. 1986-452. Moreover, it is equally well established that the fact that a case is fully stipulated does not change the burden of proof. *Zarin v. Commissioner*, 92 T.C. 1084, 1089 (1989); accord *Reinhardt v. Commissioner*, 85 T.C. 511, 516 n. 6 (1985); *Service Bolt & Nut Co. Trust v. Commissioner*, 78 T.C. 812, 819 (1982), affd. on other issues 724 F. 2d 519 (6th Cir. 1983); *Estate of Luehrmann v. Commissioner*, 33 T.C. 277, 281 (1959), affd. 287 F.2d 10, 16 (8th Cir. 1961). The view expressed in these cases is reflected in our Rule 122(b), which reads:

(b) Burden of Proof: The fact of submission of a case, under paragraph (a) of this Rule, does not alter the burden of proof, or the requirements otherwise applicable with respect to adducing proof, or the effect of failure of proof.

In our judgment, the Commissioner has certainly carried the burden of going forward. However, although the stipulated record shows more than the naked 12-month 1982 leases, the record leaves even more unexplained by petitioners. The fact that petitioner made leases only to his controlled corporation in 1982 leaves open the question whether his leases in other years were also exclusively to his corporation. Was there a business reason for such leases as opposed to the lessee's acquiring the leased items directly? Was there in fact a pattern over a significant number of years that petitioner's leases were generally renewed at the end of each 12-month period? And where some of the leases were not renewed were there reasons for such failure to renew that left undisturbed a pervasive intention to renew the leases generally? We are left in the dark as to the answers to these and other highly relevant questions bearing upon whether petitioner's 1982 leases here in controversy were in substance really for indefinite periods.[4] In the circumstances, we would conclude that

---

[4]Petitioners' entire *affirmative* argument in support of their position was summarized by them in their opening brief under "*Points of Fact and Law on Which Petitioners Rely*," as follows:

petitioners had failed to carry their burden of proof and would enter decision against them, even though the answer to any particular question might not be adversely pivotal against petitioners. The point is that the entire picture must be taken into account in determining whether the leases were really intended in substance to be indefinite in duration. Petitioners' failure to present the full picture to enable us to make a proper finding amounts to their failure to carry their burden of proof.

The result that we thus reach here is contrary to that in our earlier opinion, T.C. Memo. 1988-349. The Court of Appeals vacated our decision and remanded the case for further proceedings, stating that, 889 F.2d at 791, (1) we "fail[ed] to explain" whether we applied the factors (i.e., those referred to *supra* p. 89) "or other factors to the stipulated record in reaching [our] decision," and (2) that our opinion "also fail[ed] to shed any light on the Commissioner's contention that [we] 'relieve[d] [the Borchers] of their burden of proving the reasonably contemplated term of their lease[s] was less than [fifty] percent of the useful life of the leased property and impose[d] on the Commissioner the burden of proving the contrary.' "

It is quite true that in our earlier opinion we did not specifically address the various factors listed *supra* p. 89, because in respect of the second ground of the Eighth Circuit's opinion, we in fact did place the burden of proof upon the Commissioner, and held that the Commissioner had failed to carry the burden of proof. We so held

---

1. The useful life of the property for purposes of Internal Revenue Code Section 46(e)(3)(B) is six years as a matter of law. The Stipulation of Facts states that the useful life is not less than three years.

2. The written leases signed and followed by the Petitioner and the lessee were unambiguous and for a specific term of 12 months.

3. All documentary evidence leads to the inescapable conclusion that the terms of the subject leases are less than 50% of the useful life of the equipment.

4. There is no evidence presented to the Court which indicates that the lessor (Petitioner) or the lessee intended the term of the leases to be other than specifically provided by their written terms.

5. Related persons (including a taxpayer and his controlled corporation) may enter into business transactions between themselves. Written agreements executed at the time of those transactions should be respected by the Internal Revenue Service absent clear evidence that other terms are intended.

It is quite true that *the Commissioner* relied on some of the factors mentioned *supra* p. 89, and that petitioners attempted to *respond* to them in their reply brief. But the only factor affirmatively relied upon by them in their opening brief was the formal 1-year term of the leases.

because we then thought that we were compelled to do so by *Sauey v. Commissioner*, 90 T.C. 824 (1988), affd. without published opinion 881 F.2d 1086 (11th Cir. 1989).[5] A further reading of *Sauey* persuades us now that it can be reasonably understood either way in respect of the burden of proof, and that we felt unduly pressured by it at the time of our earlier opinion in view of the posture of both cases having been submitted on a stipulated record.

Upon further reflection, we also recognize that *Sauey* is distinguishable from this case on its facts. In each case, the taxpayer leased section 38 property to a wholly owned or substantially wholly owned corporation for a fixed period that complied with the requirements of section 46(e)(3)(B) if the term of the lease were accepted at face. In *Sauey*, the taxpayer and his corporation terminated the lease prior to the end of its term and he then leased the property (a new airplane) to a different corporation. That fact lent support to the conclusion that the parties to the lease did not intend it to be for an indefinite period as argued by the Government. In the instant case, on the other hand, the stipulation shows that petitioner husband leased the identical property (computer equipment) to his same corporation in 1983 upon termination of the 1-year 1982 leases at issue. There was also evidence in the stipulation here that petitioner husband had leased other computer equipment to the same corporation in 1981, which he re-leased to it in the taxable year 1982, and then re-leased a portion of it again to his corporation in 1983.

To be sure, the factual patterns in both cases are similar in many respects, but they are nevertheless sufficiently different that the results may fairly be considered as falling on opposite sides of the line. As stated by Judge Friendly in a different context, "If the distinction seems fragile, that is not unusual in cases near a frontier, with large hinterlands on either side." *Petschek v. United States*, 335 F.2d 734, 737 (2d Cir. 1964). Cf. also in this connection *Welch v. Helvering*, 290 U.S. 111, 116 (1933); *O'Donnell v. Commissioner*, 62 T.C. 781 (1974), affd. without published opinion

---

[5]As to the Eleventh Circuit's unpublished opinion, rule 361 of the Eleventh Circuit's rules indicates that such opinions do not have precedential value, and that according to Internal Operating Procedure 3, "[A]lthough unpublished opinions may be cited as precedent, this is looked upon with disfavor by the Court."

519 F.2d 1406 (7th Cir. 1975); *Estate of Mary Cotton Wood v. Commissioner,* 39 T.C. 919, 924 (1963).

In response to the specific question of the Court of Appeals about whether we applied the various enumerated factors (i.e., those referred to *supra* p. 89) "or other factors to the stipulated record in reaching [our] decision," we state that we take such enumerated factors into account as well as other factors like those mentioned *supra* p. 91, that we regard as relevant in determining whether the parties "realistically contemplated" that the terms of the 1-year 1982 leases were actually intended to be 1 year or indefinite. In this connection, we note (1) that the record here is devoid of evidence as to whether it was an established practice on the part of the taxpayer to buy equipment for lease to meet the special needs of his lessee; (2) that the lessor had control of the lessee; (3) that, apart from the year 1982, the record does not show whether the lessor leased only to his controlled corporation; (4) that the record leaves uncertain whether the taxpayer's corporation leased only from him; (5) that the record fails to show whether the leases were renewed either automatically or without negotiation, although the question relating to "negotiations" with one's own corporation may be nothing more than an Alice-in-Wonderland inquiry; (6) that the record fails to show whether the equipment was sold once the lessee no longer needed it; (7) that the record fails to establish whether the leasing arrangement amounted to tax avoidance; and (8) that the record fails to show whether the leasing was a "financing arrangement." As previously noted, we also took into account the various factors specifically identified *supra* p. 91.

On this record, we conclude that there was no preponderance of evidence in support of the taxpayer. And there was certainly not enough evidence to carry the burden of showing "affirmatively that the parties realistically contemplated that the terms of the leases would in fact be less" than the permissible statutory limit. *Hokanson v. Commissioner,* 730 F.2d 1245, 1249 (9th Cir. 1984); *Connor v. Commissioner,* 847 F.2d 985, 989 (1st Cir. 1988); *Owen v. Commissioner,* 881 F.2d 832 (9th Cir. 1989), and *McEachron v. Commissioner,* 873 F.2d 176 (8th Cir. 1988), both affg.

T.C. Memo. 1987-375.[6] As these cases demonstrate, such burden applies whether the taxpayer relies upon the stated fixed term in a lease or whether he seeks to show that a lease without any fixed term was really contemplated to last only for a limited period that is in compliance with the statutory requirement.

We have now concluded here, upon further consideration of the case in light of the circumstances set forth above, that decision must go against petitioners for failure to carry their burden of proof.

*Decision will be entered for the respondent.*

Reviewed by the Court.

CHABOT, PARKER, SHIELDS, HAMBLEN, COHEN, CLAPP, GERBER, WRIGHT, PARR, RUWE, and WHALEN, *JJ.,* agree with the majority opinion.

NIMS and JACOBS, *JJ.,* concur in the result only.

---

KÖRNER, *Judge:* I respectfully dissent. The Eighth Circuit did not remand this case to us for any purpose except to explain the basis for our first opinion herein. *Borchers v. Commissioner,* T.C. Memo. 1988-349, vacated and remanded 889 F.2d 790 (8th Cir. 1989). I think that we could have and should have done so very simply, without changing the result of the first opinion, which was correct.

The basis for respondent's determination, quoted in the majority opinion, was that petitioners had not "established that the lease term * * * was for less than one-half the useful life of the equipment." Majority op. at 87. That was the issue raised by respondent which petitioners had to meet.

Petitioners met that burden by establishing that the lives of the equipment were 6 years; that the leases in question were only for 1 year, with no right of renewal; that when property was re-leased at the end of the first year, a new

---

[6]The Seventh Circuit is the only one that rejected the "realistically contemplated" test and substituted therefor a test requiring the Government to show that the arrangement was a "sham." *McNamara v. Commissioner,* 827 F.2d 168 (7th Cir. 1987), vacating and remanding T.C. Memo. 1986-300. However, *McNamara* has been in turn explicitly rejected by *Connor,* and the "realistically contemplated" test has since been followed by the Eighth and Ninth Circuits in *McEachron* and *Owen.*

lease was entered into and at different rentals; that some equipment was not re-leased after one renewal, and that some equipment was sold, not leased.

Respondent countered by showing the control that petitioners had over the lessee; that some of the leases were renewed, but on different terms; and that some of the leases were not renewed. This is all respondent showed, as I read the majority opinion. On this basis, the original opinion in this case held, in effect, that petitioner had made a prima facie case in this fully stipulated matter, and that respondent had failed to produce evidence sufficient to rebut it. There was no suggestion that the burden of proof was being shifted to respondent. It was just that respondent had failed to overcome or even equal petitioner's prima facie case. The Eighth Circuit remanded the case to us to explain more fully the basis for our decision, and to respond to the suggestion that the Court had impermissibly shifted the burden of proof to respondent. I think we could do so very simply, by reference to the significant factors mentioned in the first opinion of this Court herein.

Instead, the majority opinion goes far beyond what the Eighth Circuit asked for, reverses the earlier decision, and arrives at a different result. What the majority opinion does is:

1. Acknowledge that petitioners made a prima facie case which would prevail, if not overcome by respondent, who had the burden of going forward with the evidence;

2. acknowledge that the evidence of respondent would not be enough to carry burden of proof, if respondent had it;

3. raise a lot of speculative questions, which were not asked by respondent or the Court at trial; and

4. suggest answers to those questions which are adverse to petitioners.

Thus, the majority opinion, after discussing the control which petitioners had over the corporation, and the pattern of leasing and re-leasing which went on (all of which was stipulated) then states that: "at the very least troubling doubts would have been cast upon petitioners' prima facie case. Indeed, such evidence [sic] strongly suggests that the leases were subject to the manipulative will of the lessor to extend the leases beyond the terms thereof, and were of

indefinite duration. While such evidence [sic] may not have been sufficient to carry the burden of proof if such burden were upon the Commissioner, it would certainly have been sufficient to carry his burden of going forward." Majority op. at 90. I submit that such "troubling doubts" were not evidence at all. They were nothing more than innuendo, suspicion, and speculation. Having raised such "troubling doubts," the majority opinion apparently decides that this was evidence which sustained respondent's burden of going forward with the evidence and destroyed petitioners' prima facie case, so that petitioners could not prevail with the ultimate burden of persuasion, which they correctly had.

I do not think the Court should decide a case by filling in the evidentiary gaps presented by *either* side, by substituting suspicion and innuendo for true evidence. In the original opinion herein, we followed *Sauey v. Commissioner,* 90 T.C. 824 (1988), affd. without published opinion 881 F.2d 1086 (11th Cir. 1989). That is quite a new case, and is supported by *McNamara v. Commissioner,* 827 F.2d 168 (7th Cir. 1987). In my opinion, *Sauey* states the law correctly. There is not the slightest suggestion in that case that the burden of proof was being shifted to respondent, as respondent herein has argued. In fact, I think the opinion in *Sauey* makes it perfectly clear that the burden of ultimate persuasion rests on the petitioner, as it must. *Sauey v. Commissioner,* 90 T.C. at 828-830. I find nothing in the original opinion herein of this Court that indicates that we had put the burden of proof on respondent, and I am satisfied that we did not.

In sum, the remand of this case from the Eighth Circuit to this Court does not compel the result which the majority achieves here. It simply requires that the Court make more clear the reasons for holding for petitioner. This case as originally decided did not shift the burden of proof to respondent, as the majority opinion states; it simply required respondent to go forward with the evidence and do his job. It is not the Court's task to do it for him, by creating "troubling doubts" from the evidence presented, and then using the "troubling doubts" as evidence to rebut petitioners' prima facie case, which the majority concedes

petitioners have made. I would: (1) Reject respondent's argument that the burden of proof herein was wrongly shifted to respondent; (2) affirm that the burden of proof was on petitioners herein, and never shifted; (3) affirm that the petitioners made a prima facie case, which respondent did not rebut; and (4) reaffirm the original decision in this case.

SWIFT, WELLS, and COLVIN, *JJ.*, agree with this dissent.