WALTER G. COX, JR. AND CAROL L. GRUBER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cox
Docket No. 24718-90
United States Tax Court
T.C. Memo 1992-621; 1992 Tax Ct. Memo LEXIS 652; 64 T.C.M. (CCH) 1123; October 22, 1992, Filed *652 Decision will be entered for respondent. For Petitioners: Peter M. Davis. For Respondent: Stephen M. Friedberg. KORNER
KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: By notice of deficiency dated August 10, 1990, respondent determined with respect to petitioners' 1985 joint Federal income tax a deficiency in the amount of $ 10,614.02 and an addition to tax under section 6661[1] in the amount of $ 2,378.00. After concessions, [2] the issues that remain for decision are: (1) Whether respondent erred in determining that petitioners were entitled to a depreciation deduction in 1985 of only $ 750 arising from the acquisition in that year of certain remote control converter boxes for cable television (converter boxes); (2) whether respondent erred in disallowing in part a maintenance fee claimed in 1985 with respect to the converter boxes; *653 (3) whether respondent erred in disallowing for 1985 the claimed investment tax credit relating to the sale-leaseback of the converter boxes; and (4) whether respondent erred in determining that for 1985 petitioners were liable for the addition to tax pursuant to section 6661. FINDINGS OF FACT The case was submitted fully stipulated under Rule 122. The stipulated facts, together with the attached exhibits, are incorporated herein by this reference. At the time the petition in this case was filed, petitioners resided in Salem, Virginia, and reported income on the cash basis, using a calendar year. On December 30, 1985, petitioner Walter G. Cox (hereinafter Cox or petitioner) purchased 1,150 converter boxes from *654 Prairieland Cablevision Corporation (Prairieland) for $ 60,000. Pursuant to a form of vehicle/equipment lease dated December 27, 1985, these converter boxes were leased to Prairieland for a term of 59 months at $ 1,295 per month with the first payment due on January 27, 1986. According to paragraph 8 of the lease, the "Lessee would keep and maintain such vehicle and/or equipment in good operating and working order as required in the maintenance program described in the owners manual and shall perform all protective maintenance required to ensure full valuation of the manufacturer's warranty." Paragraph 9 provided, inter alia, that the lessee would cover all costs of maintenance. The lease did not mention any obligation on the part of the lessor to make any payment related to maintenance expenses. Petitioner Cox has been a 10-percent shareholder and a member of the board of directors of Virginia Transformer Corporation (VTC) from 1982 to the present. As a director, petitioner received no compensation until 1986. From 1986 to 1988, VTC paid him in total $ 425, which amount he transferred to his employer. He did not report as income the amounts paid to him for any of those years. *655 In 1989, 1990, and 1991, petitioner received $ 1,805, $ 3,750, and $ 3,500 in director's fees from VTC, respectively. Petitioners, on their 1985 return, depreciated the converter boxes according to the Accelerated Cost Recovery System (ACRS) classifying the converter boxes as 5-year life property and claiming a deduction for depreciation in the amount of $ 8,550 on Form 4562 and Schedule E. Also, on Schedule E for 1985, petitioners deducted $ 2,330 as a cleaning and maintenance expense associated with the lease of the converter boxes based upon payment of like amount to Prairieland on December 30, 1985. On Form 3468, attached to their 1985 return, petitioners reported a $ 60,000 investment in recovery property, without identifying the assets, and claimed an investment tax credit (ITC) pursuant to section 38 in the amount of $ 6,000. Petitioners reported receiving $ 15,540 in rent from their investment in the converter boxes on their 1986 return (12-month's rent at $ 1,295 per month). For 1985, with respect to petitioner's investment in the converter boxes, respondent disallowed the ITC; the maintenance deduction to the extent of $ 2,233; and $ 7,800 in depreciation. Respondent *656 determined that petitioner Gruber's income was $ 401 greater than reported and that petitioners were liable for the addition to tax under section 6661. Respondent also increased by $ 40 petitioners' deduction pursuant to section 221. OPINION Issue 1. Depreciation of the Converter Boxes for 1985
Under section 168 for the year at issue, [3] a taxpayer was allowed a first-year ACRS deduction for investment in 5-year recovery property (which the converter boxes were) equal to 15 percent of the unadjusted basis of such property. Section 168(f)(5) limited the deduction in the case of short taxable years, and authorized the Secretary to issue regulations that determine when a taxable year begins. As of this date, no final or temporary regulations on this matter have been released. However, section 1.168-2(f)(4), Proposed Income Tax Regs., 49 Fed. Reg. 5947-5948 (Feb. 16, 1984), states: a taxable year of a person placing property in service does not include any month prior to the month in which the person begins engaging in a trade or business, or holding recovery or depreciable property for the production of income. * * * *657 Petitioners do not dispute the validity of this regulation. Instead, they assert that Cox was in the trade or business of being a director since 1982, and thus, that the provision relating to the short taxable year under the proposed regulation did not apply to the converter boxes. [4] Respondent agrees that petitioner was a director of VTC. However, respondent disputes petitioners' claim that Cox's activity as a director of VTC constituted a trade or business, since, she asserts, Cox did not have an expectation of earning a profit from being a director for the year at issue. Thus, respondent allowed petitioner only $ 750 of the ACRS deduction otherwise available under section 168, that is, for the month of December in which he acquired the property (($ 60,000 x .15) / 12 = $ 750).
*658 Ordinarily, proposed regulations "carry no more weight than a position advanced on brief by respondent." F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970). However, an exception to the general rule applies where the parties, as is true in the instant case, do not question the validity of the proposed regulations as a correct statement of the law. See Arens v. Commissioner, T.C. Memo. 1990-241. This Court has previously accepted respondent's concession that the determination of the short taxable year for purposes of section 168 includes consideration of a taxpayer's involvement in a trade or business unrelated to the activity in which the recovery property is used. See McKnight v. Commissioner, T.C. Memo. 1990-69 (relying in part on the regulations under section 167). Given this background, this Court agrees with the parties that petitioners' entitlement to the claimed depreciation for 1985 arising from Cox's acquisition of the converter boxes turns on whether petitioner Cox was involved in a trade or business for the entire calendar year 1985. It is undisputed that *659 he did not acquire the property until December 1985. With regard to the determination of a trade or business, this Court has stated that: [5]
Whether or not a taxpayer's activities constitute a trade or business is a question of fact to be determined from all the circumstances of each particular case. There are a number of factors that are considered in making this factual determination. Some of these factors are the time devoted by the taxpayer to the enterprise and the manner in which the taxpayer's records are kept and his transactions entered into. However, even where * * * the taxpayer devotes substantial time to the enterprise, keeps accurate records of his income and expenditures, and has not established that he is engaged in a trade or business unless he proves that he conducted the operation for the purpose of making a profit. * * * [Bolt v. Commissioner, 50 T.C. 1007, 1013 (1968); emphasis added.] *660 Respondent claims that petitioner Cox did not have a profit objective in 1985 with respect to his activity of being a director of VTC. Respondent relies on the following factual circumstances: (1) Cox did not earn any fees as a director for 1982 through 1985; (2) he turned over the minimal fees he received from 1986 to 1988 to his employer; (3) he did not report these fees as income; and (4) he took no deductions with respect to this alleged trade or business in either 1985 or 1986. [6] Respondent concludes that at best there was not enough evidence presented for this Court to find that Cox had a profit objective with respect to his activity as a director of VTC, and consequently that this activity did not constitute a trade or business. Petitioners argue that Cox's activity as a director of VTC constituted a trade or business. To support this contention, they adduce the regulations under section 183, which are *661 used to determine whether a party is engaged in an activity for profit for purposes of that section. In particular, they cite section 1.183-2(b)(6), Income Tax Regs., for the proposition that a series of losses is not determinative of an activity lacking a profit objective. Petitioners combine the effect of this regulation with the fact that Cox earned significant fees for 1989 through 1991 as a director of VTC and conclude that Cox was in a trade or business of being a director for 1985. Petitioners offered no further evidence regarding petitioner's profit objective or whether petitioner was in the trade or business of being a director, such as what petitioner did in that capacity. Based on this scanty record, we agree with respondent. Although the case was fully stipulated, the burden of proving that Cox was in the trade or business of being a director remained with petitioners. See Rules 122(b), 142(a); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991). The evidence petitioners presented with respect to their motive for engaging in the activity cut both ways and was not persuasive. *662 Further undermining petitioners' position was their failure to offer additional evidence through the stipulation of facts regarding petitioner's relationship with VTC or to explain why such evidentiary items were unavailable. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Since we are not persuaded that petitioner was in the trade or business of being a director during 1985, and no other trade or business being suggested, respondent's partial disallowance of petitioners' depreciation deduction for 1985 is sustained. [7]
Issue 2. Maintenance Fee Deduction
Petitioners paid $ 2,330 to Prairieland *663 in December 1985 and deducted the entire amount as a maintenance expense associated with the lease of the converter boxes on their Schedule E for 1985. Respondent, in the notice of deficiency, amortized the payment over 24 months and allowed only a deduction of $ 97 (1 month) for this expense in 1985, projecting an allowance of $ 1,164 for 1986 (12 months) and $ 1,069 for 1987 (11 months). Respondent notes, on brief, that the lease documents do not provide for the $ 2,330 payment, and that no further evidence regarding the characterization of this payment is contained in the stipulation of facts. Respondent concludes that petitioners did not present sufficient evidence to establish the necessity or requirement of the payment and also that the payment "appears" to represent additional consideration paid to the seller/lessee to qualify for the investment tax credit. Petitioners assert that respondent's characterization of the maintenance expense as additional consideration raises a new matter. See Rule 142(a). Be that as it may, respondent, in the notice of deficiency, accepted petitioners' characterization of the payment as a "maintenance expense" and allocated this expense over *664 2 years. The pleadings and the notice of deficiency gave petitioners "fair notice of the matters in controversy", and in their opening brief, they argued that the $ 2,330 payment represented an expense deductible in full in 1985. See Rule 31(a). In these circumstances, petitioners have the burden of proof as to whether they were entitled to expense the maintenance fee in full in 1985. Rule 142(a); cf. Estate of Finder v. Commissioner, 37 T.C. 411, 423 (1961). [8]
*665 It was incumbent on petitioners to show that respondent's allocation of that payment over 24 months was erroneous. To meet their burden, petitioners rely on the sole fact that they paid Prairieland $ 2,330 by check dated December 30, 1985, which on its face stated that it was issued to pay for maintenance. Petitioners have not presented or offered any evidence establishing that the expenditure did not result "in the creation of an asset having a useful life which extends substantially beyond the close of the taxable year", sec. 1.461-1(a)(1), Income Tax Regs, that it did not create more than incidental future benefits, Indopco, Inc. v. Commissioner, 503 U.S.    , 112 S. Ct. 1039 (Feb. 26, 1992), or that expensing it in 1985 clearly reflected income, sec. 446(b). Thus, we are not persuaded that the payment represented an expense deductible in full in 1985, and we sustain respondent's determination. Issue 3. Investment Tax Credit
Under section 38, an income tax credit is available for investment in property as defined in section 48(a). For noncorporate lessors, this credit is limited by section 46(e)(3)(B), which, in relevant part, provides: *666 (3) Noncorporate Lessors. -- A credit shall be allowed by section 38 to a person which is not a corporation with respect to property of which such person is the lessor only if -- * * * (B) * * * for the period consisting of the first 12 months after the date on which the property is transferred to the lessee the sum of the deductions with respect to such property which are allowable to the lessor solely by reason of section 162 (other than rents and reimbursed amounts with respect to such property) exceeds 15 percent of the rental income produced by such property. Whether petitioners are entitled to an ITC in this case arising from petitioner's acquisition and lease of the converter boxes is entirely computational and has effectively been resolved by our holding sustaining respondent's allocation of the maintenance expense. Petitioners concede in their opening brief that if the expense, which was the sole section 162 deduction claimed for the investment in the converter boxes, was not fully deductible in the first year of the lease, the 15-percent test of section 46(e)(3)(B) would not be satisfied. The record supports this conclusion. Petitioners do not dispute that they received *667 at least $ 14,245 in rental income in the first 12 months of the lease, and we are upholding respondent's allocation of the maintenance expense, under which petitioners would be allowed to deduct $ 1,164 in the first 12 months of the lease. Since the ratio of section 162 rental expenses to rental income is less than 15 percent of rental income, petitioners are not entitled to the ITC claimed on their return for 1985. We note that petitioners on brief frame the issue of their entitlement to the ITC as involving a determination of whether petitioner received only 11 instead of 12 rental payments in the first 12 months of the lease. Irrespective of our holding with respect to the deductibility of the maintenance expense, petitioners would not have met their burden on this issue. Petitioners offered into evidence a canceled check from Prairieland dated January 8, 1987; a deposit slip showing that the aforementioned check had been deposited on January 13, 1987; and their banking statements from 1986 to establish that they received only 11 rental payments in the first year of the lease. We find this evidence unpersuasive. Even if it is true that petitioner received only 11 rental *668 payments in the first 12 months of the lease, as they argue, the allocated expenses of $ 1,164 would still be less than the 15 percent of income which the law requires. [9]
Issue 4. Section 6661
*669 Section 6661 imposes an addition to tax equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). To determine the amount of the understatement for purposes of this section, the understatement is reduced by the items for which the taxpayer has substantial authority or for which the taxpayer has adequately disclosed the relevant facts regarding their tax treatment on the return. Sec 6661(b)((2)(B). Petitioners bear the burden of proof on this addition to tax. Rule 142(a). Respondent determined a deficiency of $ 10,614, but conceded that the addition to tax under section 6661 did not apply to the deduction of the maintenance fee and the failure to report $ 401 in wage income. Respondent determined that the understatement to which section 6661 applies was $ 9,510, which is greater than 10 percent of the correct tax liability for 1985 -- $ 8,245.10. Ultimately, to avoid this addition to tax, petitioners must show that they either had substantial authority for or made adequate disclosure *670 with respect to the ITC and the depreciation claimed for 1985 arising from petitioners' investment in the converter boxes. Petitioners make several unpersuasive arguments. First, petitioners rely on Shirmer v. Commissioner, 89 T.C. 277, 285-286 (1987), and Rev. Proc. 91-19, 1991-1 C.B. 523, which provides that disclosure is adequate where Form 3468 is properly completed and attached to the return and where the money amounts entered on Form 3468 are verifiable, for the proposition that they adequately disclosed the claimed ITC "by providing on the return sufficient information to enable respondent to identify the potential controversy involved." [10]
*671 In Schirmer, this Court held that the taxpayers for purposes of section 6661 had not identified the potential controversy -- whether an activity was engaged in for profit -- where they merely listed business income and expenses on Schedule F and Form 4562. Similarly, in the instant case, petitioners did no more than complete Form 3468 and did so, we note, without identifying the assets to which the ITC applied. This limited disclosure was not sufficient to apprise respondent of the potential controversy regarding whether the 15-percent test of section 46(e)(3)(B) had been satisfied for the lease of the converter boxes. Cf. Horwich v. Commissioner, T.C. Memo. 1991-465. Petitioners also claim that Rev. Proc. 91-19, supra, holds that disclosure is adequate where the ITC is reported as petitioners have done, and concludes that this implies petitioners' return adequately disclosed the potential controversy under case law. Rev. Proc. 91-19, however, primarily covers returns filed on 1990 tax forms for a taxable year beginning in 1990. Under Rev. Proc. 86-22, 1986-1 C.B. 562, *672 which applied to returns filed in 1986, the mere completion of Form 3468 with verifiable money amounts did not constitute adequate disclosure. Petitioners' contention that respondent's change in position implied that the manner in which petitioners reported the ITC for 1985 met the adequate disclosure standard as developed in case law is unpersuasive. Cf. Schirmer v. Commissioner, supra; Horwich v. Commissioner, supra; Edwards v. Commissioner, T.C. Memo. 1990-70. For the aforementioned reasons, we hold that petitioners failed to adequately disclose the relevant facts relating to the ITC they claimed for the converter boxes in 1985. Second, petitioners argue that they had substantial authority for the ITC they claimed on their 1985 return. However, they cite no authority, as set forth in section 1.6661-3(b)(2), Income Tax Regs., other than the requirements of sections 38 and 46 for the position they have taken. Instead, petitioners assert that the evidence they adduced provided them with substantial authority for claiming the ITC. The issue of whether petitioners were entitled to an ITC with respect to *673 Cox's acquisition of the converter boxes, in this case, was computational and depended on the amount of income received and expenses incurred with respect to the first year of the lease. Petitioners failed to offer persuasive evidence that the maintenance expense should not be amortized; in fact, they presented no evidence regarding the nature of the expense for this Court to decide its proper tax treatment. Moreover, they did not provide sufficient evidence as to the amount of rental payments received in the first year, nor any legal authority to support their assertion that they were entitled to an ITC in 1985. Therefore, we hold that petitioners did not have substantial authority for claiming the ITC. See sec. 1.6661-3(a)(2), Income Tax Regs.
To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners concede the portion of the deficiency related to increased wages attributable to petitioner Carol Gruber in the amount of $ 401. In light of this determination, respondent, in the notice of deficiency, allowed a corresponding $ 40 increase in the "two earner" deduction pursuant to sec. 221.↩
3. Sec. 168↩ was amended by the Tax Reform Act of 1986, Pub. L. 99-514, sec. 201, 100 Stat. 2085, 2121. The amendments apply to property placed in service after 1986 and are inapplicable here.
4. Under the proposed regulation, the taxable year for purposes of ACRS "includes all months during which that person is engaged in a trade or business", and is not limited to the period of time the taxpayer is in the trade or business in which the recovery property is used. Sec. 1.168-2(f), Example (7), Proposed Income Tax Regs, 49 Fed. Reg. 5948↩ (Feb. 16, 1984).
5. We know of no reason why in the context of this case the same definition of trade or business does not hold for purposes of sections 162 and 168, nor do the parties contend that they are different. See Bolt v. Commissioner, 50 T.C. 1007, 1013 (1968); see generally Commissioner v. Groetzinger, 480 U.S. 23, 27↩ (1987).
6. Effectively, petitioner received no compensation for being a director of VTD from 1982 through 1988.↩
7. We note that petitioner did not report his claimed expenses and depreciation from the converter boxes as a business expense on Schedule C of his return, but on Schedule E "Supplemental Income Schedule". This suggests that petitioner did not believe he was in the trade or business of renting these boxes.↩
8. Although respondent on brief characterized the expenditure as additional consideration, there is no support in the notice of deficiency or in the stipulation for holding the payment to be additional consideration; we agree with petitioners that respondent is attempting to raise a new issue which was not pleaded, and we will not consider it. Rule 142(a). Notwithstanding respondent's new position, petitioners have the burden to prove that respondent's determination as manifested in the notice of deficiency was in error, which burden we find they have not met. Id.↩
9. The parties also disagree in their respective briefs as to whether the 15-percent test of sec. 46(e)(3)(B) is based upon the terms of the lease or upon actual payment during the period "consisting of the first 12 months after the date on which the property is transferred to the lessee". Sec. 46(e)(3)(B) (emphasis added); see also Bloomberg v. Commissioner, 74 T.C. 1368, 1372 (1980); Levy v. Commissioner, T.C. Memo. 1991-391↩. Since the property could not have been leased to Prairieland prior to its acquisition by petitioner, the 12-month period referred to in the statute as applied to the facts of this case would run, at the earliest, from Dec. 30, 1985, to Dec. 29, 1986, which period would encompass the 12th payment, according to the terms of the lease.
10. Petitioners concede that they had not complied with the disclosure requirements as set forth in the regulations, under which adequate disclosure may be of two types: (1) Disclosure in statements attached to the return; and (2) disclosure on the return as prescribed by revenue procedure. Sec. 1.6661-4(b) and (c), Income Tax Regs.↩