T.C. Memo. 2007-144

UNITED STATES TAX COURT

DARWIN J. ALBERS & PEGGY L. ALBERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18440-05.                    Filed June 7, 2007.

<u>Frank W. Bastian</u>, for petitioners.

<u>David S. Weiner</u> and <u>Frederick L. Wesner</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of
$1,986 in petitioners' Federal income tax (tax) for their taxable
year 2001.

We must decide whether petitioners are entitled for their
taxable year 2001 to deduct under section 162(a) the $8,216
claimed for "Employee benefit programs" in Schedule F, Profit or

Loss From Farming (petitioners' 2001 Schedule F), included as part of their tax return for that year.  We hold that they are not.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122,[1] have been stipulated by the parties and are so found except as stated below.

Petitioners, who at all relevant times had two children, resided in Sioux Falls, South Dakota (Sioux Falls), at the time they filed the petition in this case.

At all relevant times, petitioner Darwin J. Albers (Mr. Albers) owned and operated a grain farm (farming business) near Sioux Falls.

On a date not disclosed by the record, Mr. Albers and petitioner Peggy L. Albers (Ms. Albers) signed a two-page preprinted form entitled "WRITTEN EMPLOYMENT AGREEMENT" (Ms. Albers's employment agreement).[2]  Ms. Albers's employment agreement provided in pertinent part:

> THIS AGREEMENT, made by and between <u>Peggy Albers</u> (hereinafter "Employee"), and <u>Darwin Albers</u> (hereinafter "Employer"):

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to the Internal Revenue Code in effect for the year at issue.

[2]The word "SAMPLE" appeared across the first page of the employment agreement.

WHEREAS, Employee is, and has been, performing services as an Employee for the Employer, and

WHEREAS, Employer agrees to compensate Employee for such services, and

WHEREAS, Employer is engaged in the business of <u>farming</u>, (i.e. farming, carpentry, insurance sales, etc.) and

WHEREAS, The parties wish to formalize in writing their contractual relationship as Employer and Employee,

WHEREAS, This agreement is to remain in effect as long as each party abides to said agreement,

NOW THEREFORE, The parties do hereby agree and contract to the following:

## 1.   Services of Employee

Employee shall, at the direction of the Employer, perform the following services for the Employer:

<u>hauling grain (Truck) Drive Tractor grain cart.  getting parts.  Hauling water for spraying, fuel, picking * * * etc.  approx 20 hrs week</u>

(e.g. bookkeeping; accounts payable services, business errands, preparation of meals for help, phone services, field work, clerical and/or retail services and other usual and customary services to the business.)  Define these services.  Changes in required services will be communicated by the Employer to the Employee through the course of employment.

## 2.   Compensation

Employer agrees to establish and pay named Employee $<u>10.00</u> per hour per $<u>10.00</u> (i.e. monthly, hourly, etc.) compensation for services performed.  Compensation is subject to change upon the Employer's discretion.

**3.    Benefits**

In addition to the above compensation, the Employer agrees to provide:  certain benefits according to the terms and provisions of an established plan outlined in Plan Summary.

\*        \*        \*        \*        \*        \*        \*

**IMPORTANT NOTICE:**

The Written Employment Agreement included in your packet is a <u>Sample</u> of the type of agreement that can be used between the employer and the employee (spouse).

A Written Employment Agreement can be used to further solidify the formal working relationship between the employer and the employee (spouse).  However, the ability for a sole proprietor farmer or business owner to take advantage of AgriPlan or BizPlan does not rely upon this written agreement as long as an <u>Employer/Employee relationship</u> exists.  [Reproduced literally.]

During 2001, the year at issue, Mr. Albers employed Ms. Albers to, and she did, perform services for his farming business as provided in Ms. Albers's employment agreement.[3]  During that year, Mr. Albers paid Ms. Albers monthly cash wages of $100 for those services, from which he withheld Social Security tax and Medicare tax totaling $7.65.

During 2001, Ms. Albers was also employed (1) in surgical tech training by Sioux Fall School District 49-5 at Southeast Vocational Technical School and (2) as a nurse assistant by Plastic Surgery Associates (Plastic Surgery Associates) of South

---

[3]During the year at issue, other individuals performed services for Mr. Albers's farming business.  Mr. Albers treated those individuals as independent contractors.

Dakota, Ltd.  During 2001, Plastic Surgery Associates provided health insurance to Ms. Albers that covered her but not Mr. Albers or their children.

On December 21, 1995, Mr. Albers signed a preprinted form that was an authorization to provide a medical reimbursement plan under AgriPlan through AgriBiz.  The preprinted form on which that authorization appeared stated in pertinent part:

(1) EMPLOYER INFORMATION    AgriPlan ☒ BizPlan ☐

   Employer Last Name           First Name
         Albers                   Darwin

   Filing Status: ☒ Sole proprietor   ☐ K-1 Partnership
                  ☐ C Corporation     ☐ Sub S Corporation

(2) PARTICIPATION AND ELIGIBILITY REQUIREMENTS (Check excluded employees and elect the respective maximums; if a maximum is not elected, it will automatically be defaulted to the maximum allowed.)

   ☒    Part-time employees not completing 20 hours of work per week (maximum of 35 hours * * *

   ☒    Seasonal employees not completing 9 months of work within a year (maximum of 9 months * * *

   ☒    Employees not completing 25 years of age (maximum 25 years)

   ☒    Current employees not completing 36 months of service with employer (maximum of 36 months)

   ☒    New employees not completing 36 months of service with employer (maximum 36 months)

   ☒    Employees who are non-U.S. citizens

(3) ELIGIBLE EMPLOYEES -- Each additional employee is $50.00.  Attach a separate list, if necessary.

```
Employee Last Name      First Name      Fee
      Albers               Peggy       $175.00
```

    *      *      *      *      *      *      *

Add fee amounts to calculate your total annual fee
for AgriPlan or BizPlan         Total Fee  175.00

(4) AVAILABLE BENEFITS (Check the benefits available to
    the eligible employee)

Employee and Family

☒  Medical or Medical Related Health Insurance

☐  Dental Insurance

☒  Medical or Medical Related Expense
   Reimbursement (Please indicate amount below.
   This does not include premiums.)

$  5000 Maximum amount of medical reimbursement
   available per eligible employee for Plan year.

Employee Only

☐  Term Life Insurance - $50,000.00 max. death
   benefit

☐  Disability Insurance

(5) Authorization

The undersigned employer [Darwin Albers] hereby
executes this agreement on the 21st day of Dec
19 95, and the plan start shall be January 1st of
this year.  [Reproduced literally.]

During 2001, pursuant to the authorization that he signed to

provide a medical reimbursement plan under AgriPlan through

AgriBiz, Mr. Albers provided such a plan (AgriPlan/AgriBiz

medical reimbursement plan) for the benefit of Ms. Albers and her

family.

On April 25, 2001, Mr. Albers completed a preprinted application form entitled "Application for Individual Health & Life Insurance" (Mr. Albers's Wellmark application). In that application, Mr. Albers applied to Wellmark/Blue Cross Blue Shield of South Dakota (Wellmark) for a so-called Blue Select health insurance policy to cover himself, Ms. Albers, and their dependent children. In Mr. Albers's Wellmark application, Mr. Albers identified himself as "Applicant", Ms. Albers as "Spouse", and each of their children as a "Dependent". The portion of Mr. Albers's application entitled "Enrollment Information" stated in pertinent part:

| 1. The Plan I am applying for is: (PLEASE CIRCLE ONE) | * <u>CLASSIC BLUE</u><br>. Plan I   Plan II<br>+ Plan III   Plan IV<br>* Plan A   Plan B | <u>BLUE SELECT</u><br>$500      $750      $1,000<br>$2,500[4]   $5,000 | Are you also applying for the Supplemental Accident Option?<br>☐Yes  ☒No   N/A on Plan A or B |
|---|---|---|---|
| 2. This request for coverage is for: (check all that apply)<br>☒Self  ☒Spouse  ☒Child(ren) | | 3. This application is for: (check all that apply)<br>☒New Enrollment ☐Change ☐Adding/Removing Dependents | |
| 4. Indicate how you wish to be billed: (check all that apply)<br>☐ Monthly [Automatic Account Withdrawal required; complete form M-3506(U)]  ☐Quarterly  ☒Semi-annually  ☐Annually<br>☐ Automatic Account Withdrawal (complete form M-3506(U) Authorization for Automatic Account Withdrawal) | | | |
| 5. The amount you are submitting for health insurance is:        <u>$229.10</u> (Make check payable to Wellmark Blue Cross and Blue Shield of South Dakota)<br>       *      *      *      *      *      *      *<br>Is any portion of the premium or benefits paid by or on behalf of the small group employer?  Yes (reason) _____  ☒No<br>Is the health benefit plan part of a plan or program for purposes of Section 125 or 106 of the IRS code?   ☐Yes  ☒No | | | |
|   | *      *      *      *      *      *      * | | |
| 7. Creditable Coverage.  Does any person named on this application have health care coverage now or did they have it within the last 63 days?  ☐No ☒Yes, complete the following: | | | |

| Type of Policy - Company or Individual | Covered Individual | Effective Date | Termination Date | Insurance Company | ID Number |
|---|---|---|---|---|---|
| Family Ind. | All | 7-8 yrs. | [5] issue | Am. Republic | [6] |
|   |   |   |   |   |   |
|   |   |   |   |   |   |
|   |   |   |   |   |   |

---

[4]Mr. Albers circled "$2,500" under the "Blue Select" plan for which he was applying.

[5]The word that appeared before the word "issue" is not legible.

[6]The "ID Number" shown was Mr. Albers's Social Security number.

On April 25, 2001, Mr. Albers signed Mr. Albers's Wellmark application as "Applicant", and Ms. Albers signed that form as "Spouse".

Wellmark approved Mr. Albers's Wellmark application and issued a health insurance policy to him (Mr. Albers's Wellmark health policy) that covered himself, his spouse Ms. Albers, and their dependent children. Premiums for Mr. Albers's Wellmark health policy were paid directly by petitioners by checks drawn on a joint checking account that petitioners maintained.[7]

During 2001, petitioners paid directly to the medical and dental providers listed below the amounts shown for services provided on the dates indicated:

---

[7]The parties, apparently inadvertently, stipulated two copies of the same $1,678.80 check No. 7785, dated Dec. 22, 2001, and payable to Wellmark. Mr. Albers's Social Security number appeared as a notation on that check. The parties agree that the $8,216 deduction for "Employee benefit programs" claimed in petitioners' 2001 Schedule F included $3,586 of premiums paid during 2001 for Mr. Albers's Wellmark health policy (claimed $3,586 of health insurance premiums).

| Date | Health Provider | Amount |
|------|-----------------|--------|
| 1/15/01 | Dr. Dillon | $173.00 |
| 02/08/01 | Dr. Bliss | 144.00 |
| 04/11/01 | Dr. Dillon | 525.00 |
| 05/15/01 | Dr. Valentine (Harrisburg Booster Club) | 22.00 |
| 06/08/01 | CLM[1] | 22.58 |
| 08/03/01 | Dr. Dillon | 507.00 |
| 08/08/01 | The Eye Doctor's | 229.50 |
| 08/09/01 | Dr. Bliss | 188.00 |
| 08/29/01 | Dr. Bliss | 242.00 |
| 08/30/01 | Dr. Kevin Horner | 1,550.00 |
| 09/18/01 | Dr. Dillon | 765.00 |
| 12/06/01 | The Eye Doctor's | 238.50 |
| | Total | $4,606.58 |

[1]The record does not disclose what "CLM" means.

The total of $4,606.58 that petitioners paid directly to medical and dental providers during 2001 was paid by the following methods:  $3,708 was paid by checks signed by Mr. Albers and drawn on a joint checking account that petitioners maintained, $854 was paid by charging a credit card issued in the name of Peggy Albers,[8] and the balance was paid by a method not disclosed by the record.

Around December 27, 2001, Ms. Albers submitted to AgriPlan a request for reimbursement of medical expenses totaling $8,216. That submission consisted of a preprinted form entitled "Employee

[8]The record does not disclose who paid Ms. Albers's credit card charges of $854.

Benefit Expense Transmittal" (Ms. Albers's employee benefit

expense form) that Ms. Albers had completed.  That form, which

Ms. Albers signed as employee and Mr. Albers signed as employer,

stated in pertinent part:

**EMPLOYEE STATUS**

Gross W-2 wage to employees during
  2001 (other than benefits):                              _____[9]

    *        *        *        *        *        *        *

**BENEFIT TOTALS**

1  Medical/Health Insurance Premium
   (from Section 2)[10]                                     3586.00

    *        *        *        *        *        *        *

7  Medical expenses from 2001 plan year
   (from Sections 3 and 4)[10]                              4630.00[11]

    *        *        *        *        *        *        *

                                            **TOTAL** 8216.00

**READ, SIGN AND DATE**

To the best of my [Ms. Albers] knowledge and belief, my statements
in this transmittal are complete and true.  I am claiming only
eligible expenses incurred during the applicable plan year(s) and
for eligible plan participants.  I certify that any part or all of
these expenses have not been reimbursed previously under this or
any other benefit plan and have not been previously claimed as a
tax deduction.

    *        *        *        *        *        *        *

The employee listed [Ms. Albers] is or has been an employee for a

---

[9]No amount was shown in Ms. Albers's employee benefit expense form as her "Gross W-2 wage * * * during 2001 (other than benefits)".

[10]Sections 2 and 4 of Ms. Albers's employee benefit expense form are not part of the record in this case.

[11]The amount shown is the amount, rounded down, of the total (i.e., $4,630.58) of all of the medical expenses shown in "Section 3 Medical Expenses" quoted below.

portion or all of this plan year.  I [Mr. Albers] reviewed the expenses listed, and these expenses have or will be reimbursed by the employer pursuant to the plan.

\*        \*        \*        \*        \*        \*        \*

**Section 3 Medical Expenses**

\*        \*        \*        \*        \*        \*        \*

| Year Incurred | Name of Care Provider | Type of Service | Amount paid not covered by Insurance | Date Paid |
|---|---|---|---|---|
| | \*        \* | \*        \* | \*        \*        \* | |
| 2001 | Dillon | Dental | 507.00 | 08/03/01 |
| 2001 | Dillon | Dental | 525.00 | 04/11/01 |
| 2001 | Dillon | Dental | 173.00 | 01/15/01 |
| 2001 | Dillon | Dental | 765.00 | 09/18/01 |
| 2001 | Horner | Orthodontist | 1550.00 | 08/30/01 |
| 2001 | Bliss | Dental | 188.00 | 08/09/01 |
| 2001 | Bliss | Dental | 144.00 | 02/08/01 |
| 2001 | Bliss | Dental | 242.00 | 08/29/01 |
| 2001 | Siestra | Eye Dr. | 229.50 | 08/08/01 |
| 2001 | Siestra | Eye Dr. | 238.50 | 12/06/01 |
| 2001 | Valentine-HBC | Physical | 22.00 | 05/15/01 |
| 2001 | CLM | Strep Test | 22.58 | 06/08/01 |
| 2001 | S.V. Physicians | Strep Screening | 24.00[12] | 05/24/01 |

On April 15, 2002, petitioners filed Form 1040, U.S. Individual Income Tax Return, for their taxable year 2001.  Petitioners' 2001 Schedule F pertained to Mr. Albers's farming business.

---

[12]The record does not establish that the $24 request for reimbursement reflected in Ms. Albers's employee benefit expense form was paid in 2001 (or at any other time).  The parties agree that the $8,216 deduction for "Employee benefit programs" claimed in petitioners' 2001 Schedule F included $4,630 claimed for services by medical and dental providers (claimed $4,630 of medical and dental expenses).

In that schedule, petitioners claimed, inter alia, a deduction of $8,216 for expenses for "Employee benefit programs".

Respondent issued to petitioners a notice of deficiency (notice) for their taxable year 2001. In that notice, respondent determined to disallow the $8,216 deduction that petitioners claimed in petitioners' 2001 Schedule F for "Employee benefit programs" because "it has not been established that the deduction claimed qualifies as an ordinary and necessary business expense". In the notice that respondent issued to petitioners for their taxable year 2001, respondent also determined to allow petitioners a "Self-Employed Health Insurance Deduction" of $2,151 because "You are allowed an additional deduction for Self-Employed Health Insurance."

## OPINION

The parties submitted this case fully stipulated under Rule 122. That the parties submitted this case under that Rule does not affect who has the burden of proof or the effect of a failure of proof. Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

The parties disagree over whether the burden of proof in this case shifts to respondent under section 7491(a). In order for the burden of proof to shift to the Commissioner of Internal Revenue under that section, the taxpayer must (1) provide credible evidence with respect to any factual issue relevant to

determining the tax liability of the taxpayer and (2) comply with the applicable requirements of section 7491(a)(2). Although section 7491(a) does not define the term "credible evidence", the legislative history of the statute does. The legislative history of section 7491(a) provides in pertinent part:

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). * * * The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. * * *

H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.

As discussed below, there are factual issues relevant to determining the tax liability of petitioners for the year at issue as to which petitioners have not introduced credible evidence within the meaning of section 7491(a)(1) and as to which the burden of proof does not shift to respondent under that section.

We turn now to whether petitioners are entitled to deduct under section 162(a) the $8,216 for "Employee benefit programs" claimed in petitioners' Schedule F. A taxpayer, including the owner of an unincorporated business like Mr. Albers, is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, sec. 162(a), including any amount paid to an employee

pursuant to an employee benefit plan for an expense that such employee pays or incurs. Sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.[13] However, a taxpayer, like Mr. Albers, who owns an unincorporated business is not entitled to deduct health insurance costs that he pays or incurs for himself, his spouse, and his dependents except as provided in section 162(l).[14]

---

[13]See Francis v. Commissioner, T.C. Memo. 2007-33.

[14]As applicable here, sec. 162(l)(1) provides that a taxpayer, like Mr. Albers, is entitled to deduct 60 percent of any amount that such taxpayer paid or incurred during 2001 for insurance that constituted medical care for such taxpayer, such taxpayer's spouse, and such taxpayer's children. Sec. 162(l) provides in pertinent part:

SEC. 162. TRADE OR BUSINESS EXPENSES.

\* \* \* \* \* \* \*

(l) Special Rules for Health Insurance Costs of Self-Employed Individuals.--

(1) Allowance of deduction.--

(A) In general.--In the case of an individual who is an employee within the meaning of section 401(c)(1), there shall be allowed as a deduction under this section an amount equal to the applicable percentage of the amount paid during the taxable year for insurance which constitutes medical care for the taxpayer, his spouse, and dependents.

(B) Applicable percentage.--For purposes of subparagraph (A), the applicable percentage shall be determined under the following table:

| For taxable years beginning in calendar year-- | The applicable percentage is- |
|---|---|
| 1999 through 2001 . ... . . . . . . .60 | |

(continued...)

At the core of petitioners' position that the $8,216 for "Employee benefit programs" claimed in petitioners' Schedule F is deductible under section 162(a) are petitioners' contentions that:

(1) "The payment of medical expenses and insurance premiums were made on behalf [of] Peggy Albers, a bona fide employee of Darwin Albers's farm business, pursuant to a valid I.R.C. § 105(b) health plan [AgriPlan/AgriBiz medical reimbursement plan]; therefore, Petitioners are entitled to deduct the reimbursements as an employee benefits program expense on their Schedule F";

(2) the claimed $3,586 of health insurance premiums "were paid directly on behalf of Peggy Albers, an employee, to reimburse her for the medical expense incurred by her spouse pursuant to the I.R.C. § 105(b) plan [AgriPlan/AgriBiz medical reimbursement plan]";

(3) "Peggy Albers requested that her employer pay for these out-of-pocket medical expenses [the claimed $4,630 of medical and dental expenses] * * * and the expenses were in turn paid directly by the employer, Darwin Albers"; and

(4) "There is no provision in I.R.C. § 105 or the plan provided by Darwin Albers [the AgriPlan/AgriBiz medical reimbursement plan] that prohibits the employer from paying the medical expense directly to the provider rather than reimbursing the employee. In fact, I.R.C. § 105(b) explicitly provides that expenses can be paid, 'directly or indirectly,' to the employee to reimburse the employee for expenses incurred by her, her spouse or dependents for medical care."

---

[14](...continued)
The legislative history under sec. 162(l) establishes that that statute was enacted "to reduce the disparity between the tax treatment of owners of incorporated and unincorporated businesses." S. Rept. 104-16, at 11 (1995); see also H. Rept. 104-32, at 7-8 (1995).

In advancing the foregoing contentions, petitioners misunderstand and/or misstate the provisions of section 105(b). Section 105(b) on which petitioners rely provides in pertinent part:

> SEC. 105.  AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.
>
> *       *       *       *       *       *       *
>
> (b) Amounts Expended for Medical Care.-- * * * gross income does not include amounts referred to in subsection (a) if such amounts are paid, directly or indirectly, to the taxpayer to reimburse the taxpayer for expenses <u>incurred by him</u> for the medical care (as defined in section 213(d)) of the taxpayer, his spouse, and his dependents * * *. [Emphasis added.]

Contrary to petitioners' contentions, section 105(b) addresses a situation where certain amounts described in section 105(a)[15] are paid, directly or indirectly, to a taxpayer to reimburse the taxpayer for the expenses that <u>such</u> <u>taxpayer</u> <u>incurred</u> for the medical care of such taxpayer, such taxpayer's spouse, and such taxpayer's dependents.

---

[15]Sec. 105(a) provides:

> (a) Amounts Attributable to Employer Contributions.--Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

With respect to the claimed $3,586 of health insurance premiums for Mr. Albers's Wellmark health policy, the record establishes, and petitioners concede,[16] that Mr. Albers, the applicant and primary insured under that policy, incurred such premiums. With respect to the claimed $4,630 of medical and dental expenses, petitioners have failed to produce evidence, let alone credible evidence, see sec. 7491(a)(1), that establishes that Ms. Albers, and not Mr. Albers, incurred, or paid, $3,776 of such expenses. Although the record establishes that Ms. Albers charged to her credit card, and thus incurred, $854 of the claimed $4,630 of medical and dental expenses, petitioners have failed to produce evidence, let alone credible evidence, see sec. 7491(a)(1), that establishes that her employer Mr. Albers paid those charges on her behalf or that her employer Mr. Albers reimbursed her for her payment of those charges.[17]

On the record before us, we find that petitioners have failed to establish that her employer Mr. Albers paid, directly or indirectly, to Ms. Albers pursuant to the AgriPlan/AgriBiz

---

[16]Petitioners concede on brief that the claimed $3,586 of health insurance premiums were "incurred by her [Ms. Albers's] spouse [Mr. Albers]", and not by her. The parties stipulated that those premiums were "paid by check from petitioners' joint checking account." Mr. Albers's Social Security number appeared as a notation on the check that is in the record in this case and that paid a portion of such claimed premiums during the year at issue.

[17]The parties stipulated that $4,606.58 of the claimed $4,630 of medical and dental expenses was "paid directly by petitioners".

medical reimbursement plan the claimed $3,586 of health insurance premiums and the claimed $4,630 of medical and dental expenses to reimburse her for expenses that she incurred, or paid, for the medical care of herself, her spouse Mr. Albers, and/or her dependent children. See sec. 105(b). On that record, we further find that petitioners have failed to establish that any portion of such claimed premiums and such claimed expenses is an ordinary and necessary expense paid or incurred by Mr. Albers in carrying on his farming business.[18] See sec. 162(a); sec. 1.162-10, Income Tax Regs.

Based upon our examination of the entire record before us, we find that petitioners have failed to establish that they are entitled under section 162(a) to the $8,216 deduction for "Employee benefit programs" claimed in petitioners' Schedule F.[19]

---

[18]Petitioners' reliance on Revenue Ruling 71-588, 1971-2 C.B. 91, is misplaced. In that revenue ruling, a taxpayer who operated a sole proprietorship with several full time employees, including his spouse, had an accident and health plan covering all employees and their families. During the year involved in Revenue Ruling 71-588, two employees, including the taxpayer's spouse, incurred expenses for medical care for themselves, their spouses, and their children and were reimbursed pursuant to the taxpayer's plan. Revenue Ruling 71-588 held that the reimbursed amounts received by the employees are not includible in their gross income pursuant to sec. 105(b) and that such amounts are deductible by the taxpayer under sec. 162(a). Revenue Ruling 71-588, unlike the instant case, involved employees who incurred certain expenses for medical care and who were reimbursed by their employer for the expenses that they incurred.

[19]As discussed above, respondent allowed in the notice that respondent issued to petitioners for their taxable year 2001 $2,151 of the claimed $3,586 of health insurance premiums as a
(continued...)

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.

---

[19](...continued) "deduction for Self-Employee Health Insurance." See sec. 162(l)(1).