T.C. Memo. 2007-350

UNITED STATES TAX COURT

GEOFF EYLER & AUDREY EYLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18183-05.                    Filed November 27, 2007.

<u>Michael R. Horn</u>, for petitioners.

<u>Henry N. Carriger</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency of $964
in petitioners' Federal income tax (tax) for their taxable year
2001.

We must decide whether petitioners are entitled for their

taxable year 2001 to deduct under section 162(a)[1] the $5,066 claimed for "Employee benefit programs" in Schedule C, Profit or Loss From Business (petitioners' 2001 Schedule C), included as part of their tax return for that year. We hold that they are not.

FINDINGS OF FACT

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioners resided in Gibson, Iowa, at the time they filed the petition in this case.

At all relevant times, petitioner Geoff Eyler (Mr. Eyler) owned and operated a tiling business that involved his using certain specialized machinery for controlling water flow and for draining water.

During 2001, the year at issue, Mr. Eyler had one full-time employee in his tiling business, viz., his spouse petitioner Audrey Eyler (Ms. Eyler), who had been an employee of Mr. Eyler's tiling business since December 1997. During 2001, Ms. Eyler performed certain services for that business,[2] for which Mr.

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The record does not disclose the type of services that Ms. Eyler provided during 2001 for Mr. Eyler's tiling business.

Eyler paid her certain annual wages.[3]

At all relevant times, Ms. Eyler, who suffers from melanoma, experienced difficulty in obtaining a health insurance policy in her own name. At those times, Mr. Eyler, as Ms. Eyler's employer, provided a verbal plan (unwritten health plan), of which Ms. Eyler was aware, for the benefit of Ms. Eyler and her spouse Mr. Eyler. Pursuant to the terms of that plan, Mr. Eyler, as Ms. Eyler's employer, agreed to pay for health insurance for Ms. Eyler and her spouse Mr. Eyler.

On a date not disclosed by the record prior to January 1, 2000, Mr. Eyler completed a preprinted application form (Mr. Eyler's Wellmark application)[4] in which he applied to Wellmark/Blue Cross and Blue Shield of Iowa (Wellmark) for a so-called Plan III health insurance policy to cover himself and Ms. Eyler. In that application, Mr. Eyler identified himself as "Applicant" and Ms. Eyler as "Spouse". The portion of Mr. Eyler's application entitled "Enrollment Information" stated in pertinent part:

---

[3]The record does not disclose the amount of annual wages that Mr. Eyler paid Ms. Eyler during 2001. The record does, however, disclose that Mr. Eyler issued to Ms. Eyler Form W-2, Wage and Tax Statement, for 2001 that showed "Wages, tips, other compensation" of $3,600.

[4]The title of Mr. Eyler's Wellmark application is not disclosed by the record.

<table>
<tr><td>

1. The Health Care Plan you are applying for is: <u>(PLEASE CIRCLE ONE)</u><br>
Plan I   Plan II   Plan III[5]   Plan IV<br>
Plan V   Plan VI   Plan VII<br>
   Plan VIII   Plan IX   Plan X<br>
Are you applying for the **Supplemental Accident Option**?   ☒ Yes ☐ No<br>
   * * * * * * *

</td><td>

2. This request for coverage is for: (check all that apply)<br>
☐ Self[6]<br>
☒ Spouse<br>
☐ Child(ren)

</td><td>

3. This application is for:  (check all that apply)<br>
☐ New Enrollment<br>
☒ Change<br>
☐ Adding/Removing Dependents

</td></tr>
</table>

    *    *    *    *    *    *    *

5. How do you want to pay your health premiums?<br>
  ☐ **Direct Bill.**  If so, on what basis?  ☐ Quarterly  ☐ Semi-annually  ☐ Annually<br>
  ☒ **Automatic Account Withdrawal.**  If so, on what basis? <u>(Include a voided check.)</u><br>
  ☒ Monthly-1st of the month ☐ Monthly-5th of the month ☐ Quarterly ☐ Semi-annually<br>
  ☐ Annually<br>
  From: ☐ Checking or ☐ Savings * * *

6. The amount you are submitting for health insurance is: $<u>179.10</u> (One check or money order per application, made payable to Wellmark, Inc.)<br>
  The amount you are submitting for life insurance is:  $<u>    </u><br>
  a. Will your employer be paying any part of the premium for this policy either directly or through wage adjustments or other means of reimbursement?  ☒ No ☐ Yes If yes, check one item below:<br>
  ☐ Applicant is owner of a sole proprietor business ☐ Employer is deducting the full premium  ☐ Other, please explain <u>            </u><br>
  ☐ Employer has only one eligible employee ☐ Employer has been denied the opportunity to purchase insurance due to low participation<br>
  b. Will your premium payments for this coverage be deductible on your federal income tax return as a trade or business expense other than the special health insurance deduction available to self-employed persons?  ☐ No ☐ Yes

7. **Qualifying previous coverage**  Date of termination of previous coverage: <u>01-26-00</u><br>
  Has this coverage been in effect for 12 consecutive months or more?  ☒ Yes ☐ No<br>
  What type of coverage did you have?  ☐ Employer Group  ☒ Individual<br>
  ☐ Short Term Major Medical  ☐ Group Conversion  ☐ Other (please identify)<u>       </u><br>
  Who was your previous insurer? <u>Golden Rule</u>  If Blue Cross/Blue Shield (BCBS), give details below.<br>
  Name of Contract Holder <u>Audrey S. Eyler</u>     * * *<br>
  Group or Employer Name <u>           </u>     * * *

Wellmark approved Mr. Eyler's Wellmark application and issued a health insurance policy to him (Mr. Eyler's Wellmark health policy) that covered himself and his spouse Ms. Eyler.

During 2001, Mr. Eyler paid directly to Wellmark premiums of $5,066 (health insurance premiums) for Mr. Eyler's Wellmark

---

[5]Mr. Eyler circled "Plan III" as the "Health Care Plan" for which he was applying.

[6]Although the box for "Self" in Mr. Eyler's Wellmark application was not checked, the record establishes, and we have found, that that application was for a health insurance policy covering both Mr. Eyler and Ms. Eyler.

health policy.[7]

Petitioners timely filed Form 1040, U.S. Individual Income Tax Return, for their taxable year 2001.  Petitioners' 2001 Schedule C pertained to Mr. Eyler's tiling business.  In that schedule, petitioners claimed, inter alia, a deduction of $5,066 for expenses for "Employee benefit programs".

On July 12, 2005, respondent issued to petitioners a notice of deficiency (notice) for their taxable year 2001.  In that notice, respondent determined to disallow the $5,066 deduction that petitioners claimed in petitioners' 2001 Schedule C for "Employee benefit programs" because petitioners "did not establish that the health insurance expense incurred in 2001 qualifies as a Schedule C deduction".  In the notice, respondent also determined to allow petitioners a deduction of $3,040 for "Self-Employed Health Insurance".

                              OPINION

The parties submitted this case fully stipulated under Rule 122.  That the parties submitted this case under that Rule does not affect who has the burden of proof or the effect of a failure of proof.  Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

The parties disagree over whether the burden of proof in

_____

[7]The record does not disclose the capacity in which or the method by which Mr. Eyler paid the $5,066 of premiums for Mr. Eyler's Wellmark health policy.

this case shifts to respondent under section 7491(a).  In order for the burden of proof to shift to the Commissioner of Internal Revenue under that section, the taxpayer must (1) provide credible evidence with respect to any factual issue relevant to determining the tax liability of the taxpayer and (2) comply with the applicable requirements of section 7491(a)(2).  Although section 7491(a) does not define the term "credible evidence", the legislative history of the statute does.  The legislative history of section 7491(a) provides in pertinent part:

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness). * * * The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. * * *

H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.

As discussed below, there is a material factual issue relevant to determining the tax liability of petitioners for the year at issue as to which petitioners have not introduced credible evidence within the meaning of section 7491(a)(1) and as to which the burden of proof does not shift to respondent under that section.

We turn now to whether petitioners are entitled to deduct under section 162(a) the $5,066 for "Employee benefit programs" claimed in petitioners' 2001 Schedule C.  A taxpayer, including

the owner of an unincorporated business like Mr. Eyler, is entitled to deduct all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, sec. 162(a), including any amount paid to an employee pursuant to an employee benefit plan for an expense that such employee pays or incurs, sec. 162(a)(1); sec. 1.162-10, Income Tax Regs.[8]  However, a taxpayer, like Mr. Eyler, who owns an unincorporated business is not entitled to deduct health insurance costs that he pays or incurs for himself, his spouse, and his dependents except as provided in section 162(l).[9]

---

[8]See <u>Albers v. Commissioner</u>, T.C. Memo. 2007-144; <u>Francis v. Commissioner</u>, T.C. Memo. 2007-33.

[9]As applicable here, sec. 162(l)(1) provides that a taxpayer, like Mr. Eyler, is entitled to deduct 60 percent of any amount that such taxpayer paid or incurred during 2001 for insurance that constituted medical care for such taxpayer, such taxpayer's spouse, and such taxpayer's children.  Sec. 162(l) provides in pertinent part:

SEC. 162.  TRADE OR BUSINESS EXPENSES.

*       *       *       *       *       *       *

(l) Special Rules for Health Insurance Costs of Self-Employed Individuals.--

(1) Allowance of deduction.--

(A) In general.--In the case of an individual who is an employee within the meaning of section 401(c)(1), there shall be allowed as a deduction under this section an amount equal to the applicable percentage of the amount paid during the taxable year for insurance which constitutes medical care for

(continued...)

In support of their position that the $5,066 for "Employee
benefit programs" claimed in petitioners' 2001 Schedule C is
deductible under section 162(a), petitioners maintain that in
2001 Mr. Eyler paid pursuant to the unwritten health plan the
premiums for Mr. Eyler's Wellmark health policy and that such
premiums are excludable from Ms. Eyler's income under sections
105(b) and/or 106(a).[10]  As a result, according to petitioners,
the health insurance premiums at issue are deductible under
section 162(a) by Mr. Eyler as ordinary and necessary business
expenses of his tiling business.  On the record before us, we
reject petitioners' argument.

Section 105(b) on which petitioners rely provides in perti-
nent part:

---

[9](...continued)
        the taxpayer, his spouse, and dependents.

        (B) Applicable percentage.--For purposes of
        subparagraph (A), the applicable percentage shall
        be determined under the following table:

        For taxable years beginning     The applicable
        in calendar year--              percentage is--

        1999 through 2001 . .. . . . . . . .60

The legislative history under sec. 162(l) establishes that
that statute was enacted "to reduce the disparity between the tax
treatment of owners of incorporated and unincorporated busi-
nesses."  S. Rept. 104-16, at 11 (1995); see also H. Rept. 104-
32, at 7-8 (1995).

[10]Although petitioners rely on secs. 105(b) and 106(a) in
petitioners' opening brief, they rely only on sec. 105(b) in
petitioners' answering brief.

SEC. 105.   AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH
            PLANS.

    *        *        *        *        *        *        *

        (b) Amounts Expended for Medical Care.--
    * * * gross income does not include amounts
    referred to in subsection (a)[11] if such
    amounts are paid, directly or indirectly, to
    the taxpayer to reimburse the taxpayer for
    expenses incurred by him for the medical care
    (as defined in section 213(d)) of the tax-
    payer, his spouse, and his dependents
    * * *.[12]

Section 106(a) on which petitioners also appear to rely

provides:

SEC. 106.   CONTRIBUTIONS BY EMPLOYER TO ACCIDENT AND
            HEALTH PLANS.

        (a) General Rule.-- Except as otherwise
    provided in this section, gross income of an
    employee does not include employer-provided
    coverage under an accident or health plan.

A contribution by an employer to an accident or health plan

described in section 106 includes a payment that such employer

---

[11]Sec. 105(a) provides:

    (a) Amounts Attributable to Employer
Contributions.--Except as otherwise provided in this
section, amounts received by an employee through acci-
dent or health insurance for personal injuries or
sickness shall be included in gross income to the
extent such amounts (1) are attributable to contribu-
tions by the employer which were not includible in the
gross income of the employee, or (2) are paid by the
employer.

[12]For purposes of sec. 105(b), expenses for medical care
include amounts paid as premiums for insurance covering medical
care referred to in sec. 213(d)(1)(A) and (B).  Sec.
213(d)(1)(D).

makes of premiums for an accident or health insurance policy covering an employee.  Sec. 1.106-1, Income Tax Regs.

The record establishes that Mr. Eyler paid $5,066 of premiums for Mr. Eyler's Wellmark health policy.  However, petitioners have failed to produce evidence, let alone credible evidence, see sec. 7491(a)(1), such as business records or canceled checks drawn on a business checking account of Mr. Eyler, that establishes (1) that Mr. Eyler paid those premiums in his capacity as Ms. Eyler's employer pursuant to the unwritten health plan and (2) that he did not pay those premiums in his individual capacity as the applicant for, and the primary insured under, Mr. Eyler's Wellmark health policy.[13]

On the record before us, we find that petitioners have failed to carry their burden of establishing that Mr. Eyler, as Ms. Eyler's employer, paid, directly or indirectly, to Ms. Eyler pursuant to the unwritten health plan the claimed $5,066 of health insurance premiums in order to reimburse her for expenses incurred or paid for the medical care of her spouse and

---

[13]The parties stipulated that "Audrey Eyler's salary plus benefits is reasonable compensation for the work she performed." However, the parties have not stipulated, and the record does not otherwise establish, the "benefits" to which the parties are referring.  We have found that petitioners have failed to carry their burden of showing that Mr. Eyler paid the premiums for Mr. Eyler's Wellmark health policy in his capacity as Ms. Eyler's employer pursuant to the unwritten health plan.

herself.[14]  See sec. 105(b).  On that record, we further find
that petitioners have failed to carry their burden of establish-
ing that Mr. Eyler's payment of those premiums constitutes a
contribution that Mr. Eyler, as Ms. Eyler's employer, made to the
unwritten health plan.  See sec. 106(a); sec. 1.106-1, Income Tax
Regs.  On the record before us, we also find that petitioners
have failed to carry their burden of establishing that any
portion of the claimed health insurance premiums is an ordinary
and necessary expense paid or incurred by Mr. Eyler in carrying
on his tiling business.  See sec. 162(a); sec. 1.162-10, Income
Tax Regs.[15]

Based upon our examination of the entire record before us,
we find that petitioners have failed to carry their burden of
establishing that they are entitled under section 162(a) to the
$5,066 deduction for "Employee benefit programs" claimed in

---

[14]Petitioners' reliance on Revenue Ruling 71-588, 1971-2
C.B. 91, is misplaced.  That revenue ruling involved a taxpayer-
employer who operated a sole proprietorship with several full-
time employees, including his spouse, and who maintained an
accident and health plan for the benefit of those employees and
their families.  In contrast to the instant case, pursuant to
that plan, the taxpayer-employer in Revenue Ruling 71-588 reim-
bursed each taxpayer-employer's employees for expenses incurred
for the medical care of themselves, their spouses, and their
dependents.  On such facts, Revenue Ruling 71-588 held that the
reimbursed amounts received by the employees are not includible
in their gross income pursuant to sec. 105(b) and that such
amounts are deductible by the taxpayer under sec. 162(a).

[15]See also Albers v. Commissioner, T.C. Memo. 2007-144.

petitioners' 2001 Schedule C.[16]

We have considered all of the parties' contentions and arguments that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[16]As discussed above, respondent allowed in the notice that respondent issued to petitioners for their taxable year 2001 $3,040 of the claimed $5,066 of health insurance premiums as a deduction for "Self-Employed Health Insurance".  See sec. 162(l)(1).