T.C. Summary Opinion 2013-85

UNITED STATES TAX COURT

KAREN A. CHARUKA-JUSTIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14871-11S.              Filed November 4, 2013.

Karen A. Charuka-Justin, pro se.

<u>Eugene A. Kornel</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to be entered is not

reviewable by any other court, and this opinion shall not be treated as precedent

for any other case. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

In a notice of deficiency dated March 23, 2011, respondent determined a deficiency of $22,370 in petitioner's 2007 Federal income tax. The sole issue for decision is whether petitioner's dog breeding activity was an activity not engaged in for profit.

This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in New York at the time the petition was filed.

Background

Petitioner, a self-employed U.S. customs broker, obtained a customs broker's license from U.S. Customs and Border Protection in 1991. Since 2003 petitioner has operated a customs brokerage business, Atlantic Air Express, LLC (Atlantic Air), from her home. For 2004 petitioner reported self-employment income of $45,649. From this activity, petitioner reported a net profit on Schedule C, Profit or Loss From Business, for each year from 2005 to 2011. For 2007 the year in issue, petitioner reported a net profit of $130,872 on Schedule C.

Petitioner began breeding Great Pyrenees dogs in 1994 on a half acre of property in New York, where she set up kenneling facilities. Petitioner incurred expenses to set up the kennel and to purchase dogs, food, grooming supplies and equipment, a vehicle to transport the animals, and advertising. From 1994 to 1999 petitioner sought to build the prestige and reputation of the dog breeding operation, Impyrial Great Pyrenees (Impyrial), by producing a robust stock of Great Pyrenees dogs and showing the dogs at dog shows. She spoke with experienced Great Pyrenees breeders and visited various successful kennels to gather information for developing a breeding program. Petitioner's dog breeding activity sustained losses every year until 2010, for which she reported a small net profit.

In 1999, when petitioner owned five dogs, she moved Impyrial to a 15-acre farm in Orange County, New York. The purpose of the move was to accommodate a large breeding program. Petitioner also obtained a purebred dog license from the New York State Department of Agriculture and Markets, which is available only for kennels that maintain more than 10 dogs. By 2007 petitioner owned 26 dogs.

Petitioner's main source of income from the dog breeding activity is the sale of puppies. Petitioner typically charges $1,200 for a puppy but charges as much as

$4,000 for a puppy sired from one of her top-winning show dogs. Petitioner sold approximately six puppies between 1994 and 1999. During 2000 and 2001 petitioner's dogs produced six litters. In 2002 the dogs began to have fertility problems. Petitioner's dogs had other health problems that also disrupted the breeding program, including Lyme disease, bacterial infections, and thyroid problems. From 2002 to 2009 petitioner attempted to breed 46 female dogs, resulting in 17 pregnancies. The pregnancies produced 13 litters. In 2009 after consultations with veterinarians and fertility specialists petitioner administered a monthlong antibiotic treatment to all of the dogs and treated some of the female dogs with thyroid medication. Petitioner's dogs produced two litters shortly after the medical treatment. These were the first pregnancies in nearly 18 months. Petitioner sold 18 puppies in 2010.

In addition to selling puppies, petitioner sells semen from the male dogs to breeders and charges stud fees ranging from $1,200 to $2,500 for top-winning show dogs.

Petitioner reported profit or loss on Schedule C for Impyrial as follows:[1]

| Year | Income | Expenses | Gain or (Loss) |
|------|--------|----------|----------------|
| 2005 | $4,729 | $76,590 | ($71,861) |
| 2006 | 6,900 | 96,996 | (90,096) |
| 2007 | 4,600 | 71,116 | (66,516) |
| 2008 | 4,500 | 69,340 | (64,840) |
| 2009 | 6,800 | 30,790 | (23,990) |
| 2010 | 33,600 | 30,120 | 3,480 |
| 2011 | 8,320 | 27,369 | (19,049) |

Petitioner reported the income and expenses attributable to Impyrial on a Schedule C attached to her 2007 Federal income tax return. Petitioner asserts that (1) she engaged in the activity with the intent to make a profit and (2) that her return for taxable year 2002 was examined and respondent allowed her to treat Impyrial as a trade or business.

Respondent determined that petitioner did not engage in the dog breeding activity for profit and disallowed petitioner's expense deductions claimed in excess of the reported income.

_____

[1]Petitioner began Impyrial in 1994. Impyrial sustained losses every year from 1994 to 2009. The record does not reflect the amounts of Impyrial's income, expenses, and losses between 1994 and 2004.

Discussion

The Commissioner's determination in a notice of deficiency is presumed correct, and the taxpayer generally bears the burden of proving that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The submission of a case fully stipulated does not alter the burden of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioner has not alleged that section 7491(a) applies, nor does the record establish that petitioner satisfies the section 7491(a)(2) requirements. Petitioner therefore bears the burden of proof. See Rule 142(a).

Deductions are allowed solely as a matter of legislative grace. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer bears the burden of proving entitlement to any deduction claimed. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. at 115.

Section 162(a) generally allows deductions for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or

business. A taxpayer seeking to deduct trade or business expenses under section 162 must establish that the underlying activity was engaged in with an actual and honest profit objective. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer must have entered into or continued the activity with the actual, honest, and bona fide objective of making a profit. Filios v. Commissioner, 224 F.3d 16, 23 (1st Cir. 2000), aff'g T.C. Memo. 1999-92; Dreicer v. Commissioner, 78 T.C. at 644-645; sec. 1.183-2(a), Income Tax Regs. We consider all of the facts and circumstances in determining whether a taxpayer entered into the activity for a profit, placing greater weight upon objective facts than the taxpayer's statements of intent. Dreicer v. Commissioner, 78 T.C. at 645.

The following nine nonexclusive factors are relevant in determining whether the taxpayer engaged in the activity for profit: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the

financial status of the taxpayer; and (9) the elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No one factor is determinative, and our determination of whether an activity is engaged in for profit is not made on the basis that more factors indicate a profit objective or lack thereof. See id. We consider each of the factors herein.

I.      Manner in Which the Taxpayer Carries On the Activity

The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. Engdahl v. Commissioner, 72 T.C. 659, 666 (1979); sec. 1.183-2(b)(1), Income Tax Regs. A change of operating methods, adoption of new techniques, or abandonment of unprofitable methods in a manner consistent with an intent to improve profitability may also indicate a profit motive. Sec. 1.183-2(b)(1), Income Tax Regs. Perhaps the most important indication of whether an activity is being performed in a businesslike manner is whether the taxpayer implements some method for controlling losses. Burger v. Commissioner, 809 F.2d 355, 359 (7th Cir. 1987), aff'g T.C. Memo. 1985-523.

Petitioner logged the expenses pertaining to the dog breeding activity in a ledger she maintained for each year. She also retained copies of receipts to match all expenses logged in the ledger and recorded sources of income in the ledger.

Petitioner maintained binders of information related to the dogs, including breeding records, show awards, records of puppies produced, registration records, veterinary records, and purchase and sale records. Petitioner used stud fee contracts and sales contracts, and she maintained files of these contracts and provided copies to her customers. Petitioner advertised the dog breeding activity, and she used business cards and stationery. Petitioner also obtained a purebred dog license from the New York State Department of Agriculture and Markets, which she renewed each year.

In 1999 petitioner moved to a property that could accommodate a large breeding program. Within a year, she had doubled the number of dogs in the breeding program. Instead of improving profitability, the larger dog breeding activity became more expensive and generated net losses for 11 more years, until 2010, when petitioner's activity first produced a net profit. Petitioner reported a net profit of $3,480 for 2010 from the sale of 18 puppies. The dog breeding activity generated a net loss for 2011, when the activity's expenses totaled $27,369 and income amounted to $8,320. Though petitioner maintained books and records and carried on the activity in a businesslike manner, she did not change operating methods, engage in new techniques, or otherwise abandon unprofitable methods of the dog breeding activity, which consistently generated

net losses. This factor does not support petitioner's claim of a profit objective. See sec. 1.183-2(b)(1), Income Tax Regs.

II. Expertise of the Taxpayer or Her Advisors

Preparation for an activity by extensive study of its accepted business and economic practices or consultation with experts may indicate that the taxpayer has a profit motive where the taxpayer carries on the activity in accordance with those practices. Sec. 1.183-2(b)(2), Income Tax Regs.

Before commencing the dog breeding activity, petitioner had no prior experience breeding animals. Petitioner bought her first Great Pyrenees dog in 1991, three years before she began the breeding activity. Petitioner prepared for the activity by consulting with experienced breeders by telephone, visiting their kennels, and socializing with them at various dog shows. She sought out veterinarians to learn about artificial insemination and took the dogs to veterinarians when complications arose during pregnancies, if the puppies had health problems, or when the dogs were infertile. Petitioner also consulted fertility experts. She paid veterinarians to perform health clearances on the dogs before breeding. Petitioner maintained a library about dog breeding, genetics, veterinary sciences, whelping, rehabilitation, and the economics of kennel building and dog breeding. Petitioner asserts that she is known worldwide as a

leading expert in the Great Pyrenees breed, having written articles and lectured on the breed and acted as an American Kennel Club judge among other kennel club titles she holds.  Petitioner's dogs have achieved various awards for participating in dog shows, including best of breed, best in show, top winning Great Pyrenees of all time, and pedigree awards.  Petitioner's expertise in the Great Pyrenees dog, her various accolades from dog shows, and the consultations with experts support her claim of a profit objective.  See id.

III.    Time and Effort Expended by the Taxpayer

The fact that a taxpayer devotes much personal time and effort to carrying on the activity may indicate an intent to profit, particularly if the activity does not have substantial personal or recreational aspects.  See sec. 1.183-2(b)(3), Income Tax Regs.

Petitioner asserts that she spent two to three hours per day on the customs brokerage business and that she spent the rest of her time attending to the dog breeding activity by cleaning kennels, grooming dogs, administering vaccinations, feeding and watering the dogs, nursing sick dogs, caring for puppies, and training dogs.  Petitioner also attended dog shows regularly.  During the year in issue, 2007, petitioner asserts that she traveled 27,959 miles mostly throughout the Northeast United States to attend dozens of dog shows.

Petitioner has devoted much personal time and effort to carrying on the activity. She also derived substantial recreational benefit from the time she spent with the dogs; therefore, we conclude that this factor is neutral. See id.

IV.  Expectation Assets Used in Activity May Appreciate in Value

An expectation that the assets used in the activity may appreciate in value is an indication of a profit motive. Sec. 1.183-2(b)(4), Income Tax Regs. The term "profit" encompasses appreciation in the value of assets, such as land, used in the activity. Id. Thus, the taxpayer may intend to derive a profit from the operation of the activity, and may also intend that, even if no profit from current operations is derived, an overall profit will result when appreciation in the value of land used in the activity is realized since income from the activity together with the appreciation of land will exceed expenses of the operation. Id.

Petitioner asserts that she purchased the property she uses for the dog breeding activity with the expectation that it would increase in value and that the dogs' success in the show ring and years of health clearances would make each generation of puppies more valuable than the one before it. Petitioner also contends that her property has nearly doubled in value since its acquisition.

The record contains no objective evidence of the value of petitioner's real property or the value of the dogs, and there is nothing in the record to show that

appreciation of petitioner's real property or dogs would bring about an overall profit from petitioner's activity. See id. This lack of evidence makes it impossible to conclude that petitioner had an expectation that the assets used in the activity would increase in value or to determine whether they did increase in value. See Carson v. Commissioner, T.C. Memo. 1990-508. This factor neither supports nor undercuts the claim that petitioner entered into the activity with a profit motive.

V. Success in Carrying On Similar or Dissimilar Activities

Although an activity is unprofitable, the fact that a taxpayer has previously converted similar activities from unprofitable to profitable enterprises may be an indication of a profit motive with respect to the current activity. Sec. 1.183-2(b)(5), Income Tax Regs. Success in unrelated activities may also be indicative of a profit objective in the challenged activity. See Daugherty v. Commissioner, T.C. Memo. 1983-188.

Petitioner had no previous experience in dog breeding. Petitioner did, however, start her own profitable Schedule C business, Atlantic Air. Petitioner's success with Atlantic Air demonstrates initiative, foresight, and business acumen that generally lead to success in other business activities. See id. We conclude this factor is neutral.

VI.    History of Income or Losses

A series of losses during the initial stage of an activity may not necessarily be an indication that the activity is not engaged in for profit.  Sec. 1.183-2(b)(6), Income Tax Regs.  Losses continuing beyond the period customarily required to make an activity profitable, if not explainable, may indicate that the activity is not engaged in for profit.  Id.

For every year except 2010 petitioner reported net losses from the dog breeding activity that she used to offset income from the customs brokerage business.  The dog breeding activity generated substantial losses in comparison with gross receipts, and the record does not show that petitioner made an effort to cut losses or improve the potential for gain.  Petitioner had been engaged in dog breeding for 16 years when she reported her first net profit from the activity in 2010.  In 2011 the activity was again unprofitable.  Petitioner contends that the losses sustained were due to infertility problems beyond her control.  The magnitude of the activity's losses in comparison with its revenues are not explained away by the infertility problems.  The series of losses and their magnitude is an indication that petitioner did not have a profit motive with respect to the dog breeding activity.  See Burger v. Commissioner, 809 F.2d at 360.

Accordingly, this factor does not support a profit objective.  See sec. 1.183-2(b)(6), Income Tax Regs.

VII.   Amount of Occasional Profits

The amount of profits in relation to the amount of losses incurred may provide useful criteria in determining the taxpayer's intent.  Sec. 1.183-2(b)(7), Income Tax Regs.  An occasional small profit from an activity generating large losses is not generally determinative that the activity is engaged in for profit.  Id.

Petitioner made her first profit in the dog breeding activity in 2010, 16 years after she began it.  The net profit of $3,480 in 2010 was small in comparison to the losses petitioner reported from the dog breeding activity for all other years.  This factor does not support petitioner's claim that she entered into the dog breeding activity with an intent to profit.  See id.

VIII.   Financial Status of the Taxpayer

The fact that the taxpayer does not have substantial income from sources other than the activity may indicate that the activity is engaged in for profit.  Sec. 1.183-2(b)(8), Income Tax Regs.  Substantial income from other sources may indicate that the activity is not engaged in for profit, especially if there are personal or recreational elements involved.  Id.

For 2007 petitioner reported a net profit of $130,872 from her customs brokerage business. Petitioner reported net profits from the customs brokerage of $155,463, $162,590, $115,249, and $76,580 for 2005, 2006, 2008, and 2009, respectively. The potential for tax benefits from the claimed dog breeding activity losses was substantial. Deducting the losses generated by the dog breeding activity from petitioner's income from the customs brokerage business greatly reduced the after-tax cost of the activity to petitioner. This factor does not support a profit objective. See id.

IX.    Elements of Personal Pleasure

The presence of personal motives in carrying on an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved. Sec. 1.183-2(b)(9), Income Tax Regs. The fact that the taxpayer derives personal pleasure from engaging in the activity is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is in fact engaged in for profit as evidenced by other factors. Id.

The record indicates petitioner has an interest in owning, raising, and showing Great Pyrenees dogs. Petitioner had an interest in dogs starting at age five when she got her first purebred dog as a Christmas present. Although deriving personal satisfaction from an activity does not necessarily indicate the

absence of an intent to profit, "where the possibility for profit is small (given all the other factors) and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity." Smith v. Commissioner, T.C. Memo. 1997-503 (quoting Burger v. Commissioner, T.C. Memo. 1985-523), aff'd without published opinion, 182 F.3d 927 (9th Cir. 1999); see also sec. 1.183-2(b)(9), Income Tax Regs. This factor does not support a profit objective. See sec. 1.183-2(b)(9), Income Tax Regs.

## Conclusion

Considering all of the above-discussed objective facts and circumstances and the regulatory factors most relevant, we conclude that petitioner lacked the requisite "actual and honest objective of making a profit" with respect to the dog breeding activity in 2007. See Dreicer v. Commissioner, 78 T.C. at 645. Accordingly, we hold that the dog breeding activity was "not engaged in for profit" within the meaning of section 183 during the year in issue.

To reflect the foregoing,

Decision will be entered

for respondent.